## MILKS v. MILKS.

1. CONTRACTS—AGREEMENT FOR SUPPORT—BREACH—DEFENSES.
Where a husband and wife agreed to support his mother during her life, and after the husband's death the wife broke up housekeeping and went to live with a sister, so that she was no longer in position to furnish the mother with a home, her failure to carry out the contract cannot be excused on the claim that the mother would not continue to live on the premises.

2. SAME—EXECUTION—REPRESENTATIONS AS TO BINDING FORCE.
Where an agreement by a husband and wife to support his mother during her life, for which a lien was given on their homestead, was read to the wife, and its purport was clear, and could not have been misapprehended, the fact that the

husband assured the wife that the instrument would be of no binding force is no defense to a suit against her to enforce the lien.

3. SAME—MENTAL COMPETENCY.

The fact that a person is ill, and his mind at times more or less clouded, does not render him incompetent to execute an agreement, if at the particular time he is capable of fully comprehending its terms.

Appeal from Mecosta; Palmer, J. Submitted December 11, 1901. ˙ Decided December 21, 1901.

Bill by Barthina Milks against Hannah Milks and Henry Ewing, administrator of the estate of George Milks, deceased, to enforce a lien for support. From a decree dismissing the bill, complainant appeals. Reversed.

*Frank Dumon,* for complainant.

*M. Brown,* for defendants.

MONTGOMERY, C. J. George Milks was, by occupation, a farmer, and was married to the defendant Hannah Milks in 1894. Previous to the marriage of George Milks, complainant had lived with him as his housekeeper for a period of 15 years or more, and had done the woman's work on his farm. Complainant was visiting relatives in the State of New York at the time of the marriage, and, some months afterwards, returned, at the request of George Milks, and continued to reside in his family. The defendant Hannah Milks being ill a portion of the time, the burden of the household cares fell upon complainant, in large part. In the month of October, 1895, George Milks gave complainant his note for $600, the consideration being the services which she had rendered for him prior to his marriage. In the month of January, 1896, a new agreement was made between the parties. The note appears to have been surrendered and canceled, and an agreement signed by George Milks and

his wife, witnessed and acknowledged, containing the following provisions:

"For and in consideration of past, present, and future services, and, as well, duty, and by mutual agreement and understanding, said first parties do hereby agree to and with said second party to maintain, care for, and support said second party during her lifetime; to do so in a good, substantial, proper, and, in every particular, suitable manner, for people who are surrounded in similar circumstances; to furnish said second party with a reasonable amount of expense money, surroundings to be considered; to make home pleasant and agreeable for second party; and to be kind and considerate to and with second party at all times, second party being mother to George Milks. This agreement being given to protect second party in and during her old age, for care, support, and maintenance, both in sickness and in health; said support and maintenance to be complete, ample, and sufficient at all times to be considered reasonable and proper. And it is hereby further agreed that said second party is hereby given a lien on the southwest one-quarter of the southeast one-quarter of section thirty-two, in town thirteen north, of range nine west, in Mecosta county, State of Michigan, for the full, complete, and faithful performance of the above agreement; same to be considered and treated in the nature of a collateral mortgage, and is so intended."

Complainant continued to live in the family of George Milks until his death, which occurred in June, 1899. Since his death, she has received no support from his estate, nor from defendant Hannah Milks, and this bill is filed to enforce the lien provided for in the written agreement. The circuit judge dismissed the bill, and complainant appeals.

The record does not disclose the ground upon which the circuit judge decided the case, but the substantial grounds urged here in support of the decree are that the agreement covered the homestead of the parties; that the defendant Hannah Milks, at the time of its execution, was incompetent, and was induced to sign the agreement upon a statement by her husband that it would be of no binding force; and that the complainant refused to live upon the premises after the decease of her son, and, there-

fore, that there has been no breach of the agreement. As to the last claim, it appears that Hannah Milks broke up housekeeping upon the death of her husband, and went to live with a married sister, and has never been in a position since to furnish a home for complainant. It is true she testified that she requested the complainant to remain with her at the house, but it is evident that this was intended only to be temporary, as she testifies that she thought she could stay there until the crops were taken care of. The defense that the defendant Hannah Milks was assured by her husband that the instrument would be of no binding force cannot prevail, as it appears that the instrument was read to her, and its purport is clear, and could not have been misapprehended, if Hannah Milks was at the time competent to transact business. The principal question in the case is as to her competency. A careful reading of the testimony satisfies us that she was not incompetent at the time this instrument was executed. It is true that Dr. Darr, who attended her in February, 1895, and saw her again in March, states that she was suffering from a little mental trouble, and diagnosed it as a little temporary trouble which he thought she would soon get over. This was nearly a year before the instrument was executed. Other witnesses were called by defendants to show the incompetence of Hannah Milks, and gave testimony in terms stronger than that of the doctor. On the other hand, witnesses on behalf of complainant testified that Hannah Milks appeared to be sane, although she was ill. It is undoubtedly true that, at times, her mind might have been more or less clouded. But the most convincing testimony in the case is that given by defendant Hannah Milks herself, from a careful reading of which we are satisfied that, at the time it was signed by her, she understood what the purpose of the instrument was, and fully comprehended it, and that she signed it understanding the obligations which it created. The circumstances surrounding the transaction show it to have been an eminently fair agreement.

We think the complainant is entitled to a decree foreclosing the lien for the present worth of an annuity for her expectancy of life. The annuity, based upon the testimony, will be fixed at $125 per year, and the present worth, including the period which has elapsed since the decease of George Milks, is $1,286.25, for which amount decree will be entered, with costs of both courts.

HOOKER, MOORE, and GRANT, JJ., concurred. LONG, J., did not sit.