Rhodes F. Martin, Conservator, Appellant, *vs.* Perry J. Harsh *et al.* Appellees.

*Opinion filed December 17, 1907.*

1. Contracts—*mere drunkenness does not release a party from his contracts.* To render a transaction voidable on account of the drunkenness of a party thereto, the drunkenness must have been such as to have drowned reason, memory and judgment, and to have impaired the mental faculties to such an extent as to render the party *non compos mentis* for the time being.

2. Same—*when acts of an alleged distracted person are valid.* Though the mind of a person may be to some extent impaired by age and disease, still if he has capacity to comprehend and act rationally in the tranaction in which he is engaged and can understand the nature of his business and the effect of what he is doing, and can exercise his will with reference thereto, his acts are valid.

3. Deeds—*when a deed will not be set aside at suit of conservator.* A deed made a year before the appointment of a conservator for the grantor will not be set aside for alleged mental incapacity where the evidence shows the price paid was the fair cash market value of the land and that the grantor was not overreached or deceived, and there is no sufficient proof that at the time of the transaction he was incapable, for any reason, of understanding the business in which he was engaged.

Appeal from the Circuit Court of Moultrie county; the Hon. W. G. Cochran, Judge, presiding.

Rhodes F. Martin, as conservator of Henry W. Sipe, filed his bill in the circuit court of Moultrie county against Perry J. Harsh and William Randal, alleging that on February 26, 1906, Sipe was adjudged by the county court of Piatt county to be a feeble-minded person and a spendthrift and Martin was appointed his conservator; that on September 12, 1905, Sipe was the owner of eighty acres of land in Moultrie county, and was then, and for more than one year had been, feeble-minded and wholly incapable of understanding the nature, character, extent or value of his property or of making any valid sale and convey-

ance thereof; that on that date Harsh, with the intent to cheat and defraud him, induced him to enter into a pretended contract with Harsh to procure a purchaser for said land and to sign and acknowledge a deed for said land to Randal for a pretended consideration of $10,000, which deed was delivered to Randal and by him filed for record, the said Harsh and Randal each well knowing Sipe's incapacity to make or understand said contract or deed; that Randal paid to Harsh the consideration named in the deed, less $2300 encumbrance on said land, but that Harsh falsely represented to Sipe that the land contained only seventy-six and one-half acres and that Sipe was entitled to receive payment therefor at $125 per acre, less the encumbrance thereon, and Harsh also falsely represented to Sipe that as Randal could not obtain possession of the land until March 1, 1906, he would be entitled to a reduction of interest until that date, amounting to $233.35; that Harsh paid over to Sipe said $10,000 less said $2300, and less deductions of $437.50, the price of the alleged deficiency of three and one-half acres at $125 per acre, $233.35, the interest above mentioned, and other portions of said sum the exact amount of which the complainant was unable to state, all of which deductions were fraudulently withheld; that the land was worth $12,000; that Randal went into possession and claims to be the owner; that said sale and conveyance were colorable, only, and did not convey title to Randal and said deed was a cloud upon the title of Sipe, and that the conservator was ready and willing to refund and re-pay to Randal such sums as might be found due him on account of said sale. The prayer was that Harsh and Randal be required to re-convey to Sipe and that the pretended deed be canceled.

The defendants filed answers denying the material allegations of the bill, including the mental incapacity of Sipe and the inadequacy of the price, and Randal alleged that he had made permanent and valuable improvements on the

premises. The cause was referred to the master, who reported the evidence to the court, and upon a hearing the bill was dismissed for want of equity. The complainant has appealed to this court.

W. G. CLOYD, and EDEN & MARTIN, for appellant.

W. K. WHITFIELD, E. J. MILLER, and HARBAUGH & THOMPSON, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The case depends upon questions of fact as to the mental capacity of Henry W. Sipe, the adequacy of the consideration and the fraudulent conduct of the defendants.

The evidence shows that Sipe was a man over seventy years of age, who had lived at least thirty years in the neighborhood of the land in question, which he had owned and lived on for many years. He had been married twice and his children were grown and married. In 1903 he married a third wife, and there was some disagreement in the family. He lived with his wife on the farm for a short time and then rented it to his son, who took possession March 1, 1904. Sipe and his wife lived in one room of the house situated on the farm and occupied by his son and daughter-in-law, but soon moved to Sullivan. In April, 1904, his wife left him and a few months after obtained a divorce. In May he returned to the farm and remained there until the spring of 1905, when he went to Indiana, where a married daughter was living, and there bought some property, having mortgaged the land in Moultrie county for $2500 for that purpose. While in Indiana he again married his divorced wife, and about the first of August, 1905, returned to Illinois and made his home in Bement, where he bought two pieces of real estate, taking the title to his wife but with a life estate in one to himself.

Soon after going to Bement he called upon Andrew Cunningham, a farmer living near the land, and offered to sell it to him for $125 per acre. Cunningham declined to purchase at that price but offered $115 per acre. Sipe informed Cunningham that he would not take $115 per acre at that time but if he decided to do so later he would let Cunningham know. Sipe being unable to sell the land himself, placed it in the hands of Harsh to be sold. Harsh sold the land to Randal for $10,000. Sipe and his wife executed the deed therefor and Harsh accounted to Sipe for the purchase money. In February, 1906, Martin, who is a son-in-law of Sipe, having been appointed conservator, went with Randal to see the tenant who was in possession of the land and directed him to surrender the possession to Randal, who subsequently entered into possession and made improvements amounting to about $2000.

There is no basis in the evidence for relief on the ground of the inadequacy of the consideration, for the decided preponderance of the evidence would clearly sustain a finding that $10,000 was the fair cash market value of the land when sold. The evidence would not support a finding that Harsh did not account to Sipe for the whole of the $10,000. The written contract between Sipe and Harsh authorizing the latter to sell the land was destroyed by fire, but its contents were proved by S. P. Flynn, who wrote it. It authorized Harsh to sell the eighty-acre tract as containing seventy-six and one-half acres, for $125 an acre, net, for Sipe, retaining any excess above that price as his commission, the purchaser to be allowed six per cent on all money paid until possession delivered on March 1, fifty odd dollars to remain in Harsh's hands in regard to taxes, and two mortgages, with interest, to be allowed until possession given, March 1. The Wabash railroad occupied a strip on the east side of the land for its right of way and a public highway crossed the land, dividing the two forties, the two taking about three and one-half acres

out of the tract and leaving seventy-six and one-half acres in the actual possession of the owner. The sale was made to Randal at $125 per acre for eighty acres. Harsh retained the price of the three and one-half acres as his commission and accounted for the remainder to Sipe. When called on by Martin he gave him a statement showing the details of his settlement with Sipe, the credits he claimed, aside from the commission, being $2843.18 for the two mortgages and interest, $100 in lieu of interest to March 1 on the cash payment, $52 retained for tax, $750 paid to Mrs. Sipe and $5810 to Mr. Sipe. This left a balance of $7.32, which, as Harsh told Martin, Sipe said Harsh should take and apply on his expenses going to Bement to get the papers fixed, and Harsh did so.

The evidence shows that thirty years ago Henry W. Sipe was a renter, owning no land, and indicates that he was a man of at least fair, ordinary mental capacity. No attempt was made to show any peculiarity or lack of mental power or business ability previous to a time five years before the taking of testimony, in January, 1907. No business transaction is shown since that time indicating mental weakness. There is some evidence that his memory failed him at times and there is evidence of peculiarities and improprieties of action after his wife left him. His conduct after his return to the farm, as testified to by his daughter-in-law, was reprehensible, but he continued in charge of his property and the management of his business, and no lack of ability to take care of his property and business is shown, except in one particular. His trouble dates from his marriage to his third wife. They separated, and he gave her $400 in full of all claims upon him. If he had indulged excessively in intoxicating liquors before that time the evidence fails to show it, but since that time he has used intoxicating liquors to such an extent as to become a drunkard. After his wife had procured a divorce he married her again in Indiana, and the evidence indicates that he got into some

kind of trouble there through her or with her, the nature
of which is not shown, but which resulted in his convey-
ing to his daughter and son-in-law his property in that
State. After his return to Illinois he continued his exces-
sive use of intoxicating liquors. There are indications in
the evidence that his wife got money from him to a greater
extent than was prudent. The testimony of the witnesses
who express the opinion that he was incompetent to trans-
act business is based largely on his drunkenness. Many
of those who express such opinion say that he was com-
petent when sober. Witnesses who saw him frequently
near the time of this transaction testified to his ability to
understand the nature and character of business transac-
tions. It is not alleged that he was drunk when the con-
tract and deed were signed, and it does not appear from
the evidence that such was the fact. Mere drunkenness
is not sufficient to release a party from his contracts. To
render a transaction voidable on account of the drunken-
ness of a party to it, the drunkenness must have been such
as to have drowned reason, memory and judgment, and to
have impaired the mental faculties to such an extent as to
render the party *non compos mentis* for the time being.
(*Bates* v. *Ball*, 72 Ill. 108; *Watson* v. *Doyle*, 130 id. 415.)
This case does not show any such long continued career of
drunkenness and craziness as appeared in the case of *Men-
kins* v. *Lightner*, 18 Ill. 282, and there is no evidence of
overreaching by the defendants.

Though the mind of a person may be to some extent
impaired by age or disease, still if he has capacity to com-
prehend and act rationally in the transaction in which he
is engaged, if he can understand the nature of his business
and the effect of what he is doing and can exercise his
will with reference thereto, his acts will be valid. (*Burt* v.
*Quisenberry*, 132 Ill. 385; *English* v. *Porter*, 109 id. 285;
*Pickerell* v. *Morss*, 97 id. 220; *Guild* v. *Hull*, 127 id. 523;
*Willemin* v. *Dunn*, 93 id. 511.) Tested by this rule there

is no sufficient ground for setting aside the deed. It is *prima facie* valid, and the evidence falls short of establishing the grantor's want of capacity to make it.

The decree of the circuit court is affirmed.

*Decree affirmed.*