## Christine Thulin, Appellee, v. Isaac M. Anderson, Administrator, et al., Appellants.

### Gen. No. 5264.

1. PARTIES—*who not necessary in foreclosure proceeding.* One who never had an equitable interest and who has parted with the legal title held by her, is not a necessary party to a foreclosure proceeding.

2. AMENDMENTS AND JEOFAILS—*substitution of parties.* It is proper to permit the real party in interest to be substituted as complainant in a foreclosure proceeding for one who has no further interest legal or equitable in the subject-matter of the controversy.

3. INSANITY—*when not established.* Held, under the evidence, pursuant to the rules laid down in Ring v. Lawless, 190 Ill. 520, and Martin. v. Harsh, 231 Ill. 384, that insanity had not been established.

4. PLEADING—*when defense not available in chancery.* A defense not set up or relied upon in the answer will not avail regardless of the fact that the same may have been sustained by the proof.

Bill in equity. Appeal from the Circuit Court of Rock Island county; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed March 11, 1910.

G. A. SHALLBERG and J. T. and S. R. KENWORTHY, for appellants.

J. B. and J. L. OAKLEAF, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Harriet C. Crosby filed a bill on April 2, 1907, in the Circuit Court of Rock Island county against the ad-

ministrator and heirs at law of Andrew Hendrickson, deceased, to foreclose a mortgage given by said Andrew Hendrickson upon certain real estate in the city of Moline and upon two pieces of real estate in the city of Rock Island on June 16, 1905, to secure the payment of one note for $2,900 and one note for $700 with interest at 6% because of the non-payment of the interest thereon, which, under the provisions of the mortgage, authorized the holder of the notes to declare the principal of said notes due, although they had not matured by the terms of the notes. Defendants answered, setting up that Hendrickson gave these notes as part of the purchase price of the Moline property; that he was insane when he purchased it, and that he was overreached and defrauded in the purchase. The cause was referred to the master to take proofs and report findings of law and fact. Afterwards Christine Thulin filed her petition and amended petition and pursuant thereto, on condition that she pay all costs to that date, she was substituted as complainant in place of Harriet C. Crosby, and filed a substituted bill of complaint to which a like answer was filed. The cause was again referred to the master and the proofs were taken and the master reported the proofs with his conclusions, among other things, that Hendrickson was not insane when he purchased the property, and that he was not overreached or defrauded in the bargain, and that complainant was entitled to a foreclosure. Exceptions were filed and overruled, except as to two minor matters, in which defendants were sustained. The mortgage had provided that when the $700 note was paid, the Rock Island properties should be released from the mortgage. There was a decree of foreclosure, which placed upon the Rock Island properties only the burden of the $700 note. Defendants have appealed.

There were certain peculiar facts connected with the giving and transfer of these securities of which appellants seek to avail in two ways. They contend

therefrom that the proper parties are not before the court, and that it does not appear that the option to declare the notes due for nonpayment of interest was exercised before the suit was begun; and they also claim that these facts tend to show that the owner of the real estate sold to Hendrickson had knowledge of his insanity and that he was being overreached and defrauded, and sought by these methods to place the title to the securities where these defenses would not be available. The proof shows that appellee owned the premises, consisting of a house and lot, and wished to sell them; that a factory had been built or was about to be built in that vicinity and that Hendrickson conceived that it would be a wise investment to buy this house, turn it into a rooming house and let rooms therein. Hendrickson having died, appellee could not testify and there is no proof as to the circumstances under which they met and had their negotiations. The proof shows that they agreed that appellee should sell the property to Hendrickson for $3,905, of which $1,000 was to be paid down, and the rest to be secured by a purchase money mortgage upon the property. Hendrickson owned two houses and lots in Rock Island, upon both of which there was one mortgage and upon one another mortgage. Hendrickson sought to secure a new loan upon that property wherewith to raise the $1000 to pay appellee, but found that the best he could do was to make another loan upon the Rock Island property for a sufficient sum to pay off one of these mortgages and have $305 left. Appellee employed J. B. Oakleaf to attend in her behalf to the legal business connected with the transfer. Hendrickson and appellee met at the office of Oakleaf and appellee and her attorney then learned of the inability of Hendrickson to pay more than $305 down. Appellee desired the cash with which to make improvements upon certain other real estate in Rock Island. Oakleaf proposed that as Hendrickson could pay only $305 down, he secure the balance by including in his purchase

money mortgage his two Rock Island properties, and that the notes for the purchase money be divided so that there should be one note for $700, and that the mortgage provide that when that note was paid, so that $1,000 of the principal of the consideration had been paid, then the Rock Island properties be released from this mortgage. Oakleaf also stated that he was engaged as agent in loaning money for a Mrs. Harriet C. Crosby of New York state; that he expected soon to have some of her money paid in to him, and that he could purchase these notes and take the mortgage for her when he had those moneys in hand, and could thus furnish appellee the cash in a short time. Appellee stated that she was about to go away on a trip. Oakleaf then suggested that the note and mortgage be made payable to Edna M. Mitchell, his office stenographer, and in that way the papers could be turned over to Mrs. Crosby if the money came in while appellee was absent. This was assented to by Hendrickson and appellee, and the notes and mortgage were drawn to Miss Mitchell as payee and mortgagee respectively, and Miss Mitchell endorsed the notes in blank and Oakleaf retained the notes and mortgage. This transaction was on June 16, 1905. Early in July Miss Mitchell was about to go away for a month's vacation and the moneys of Mrs. Crosby had not yet come to Oakleaf's hands. Thereupon Miss Mitchell wrote over her signature on the back of the notes a special endorsement to Harriet C. Crosby and executed an assignment of the mortgage to Harriet C. Crosby. On August 10, Mrs. Crosby's moneys not yet having come to hand, Hendrickson was adjudged insane in the County Court of Rock Island county and a conservator was appointed and Hendrickson was committed to an asylum. Thereafter Oakleaf learned from the conservator that he did not intend to pay the interest on the notes but to resist the notes and mortgage. Oakleaf then concluded that he ought not to invest the money of Mrs. Crobsy in those securities.

The papers therefore remained in his hands in that condition. The legal title was in Mrs. Crosby by the procurement of Oakleaf, her agent, but the equitable title remained in appellee and the possession of Oakleaf was also her possession. The bill was filed in the name of Mrs. Crosby, and afterwards appellee was substituted as complainant as before stated. Miss Mitchell was not a necessary party, for she never had anything but the legal interest and that she had assigned. Before appellee was substituted for Mrs. Crosby as complainant, Mrs. Crosby had assigned the note and mortgage to appellee. She thereby ceased to be a necessary party, for she had never had the equitable interest and by the assignment she ended her legal interest. The substitution of parties complainant was in harmony with Winkleman v. Kiser, 27 Ill. 21, and Smith v. Brittenham, 109 Ill. 540. It may well be that appellee should have been a party to the original bill, but that defect was cured by the substitution. We are therefore clear that there was no lack of proper parties at the time the decree was rendered.

It is argued that there was no proof of any election to declare the whole debt due. The proof shows that appellee requested the foreclosure and that the bill was filed by the agent of Mrs. Crosby. This was sufficient, and we are of opinion that the filing of the bill is of itself sufficient to show an election to exercise the right to declare the debt due. Heffron v. Gage, 149 Ill. 182; Brown v. McKay, 151 Ill. 315; Curran v. Houston, 201 Ill. 442.

Hendrickson was 63 years old, had never married, was a member of the Lutheran church, had been much devoted to the church and the pastor, had been strongly opposed to the use of intoxicating liquor, was careful and saving and had accumulated the two Rock Island properties, had given mortgages thereon and had fitted up the houses so that they could be occupied by several families, had rented the several apartments and collected his own rent, besides attending

to the duties of his employment as a teamster. Prior to April, 1905, he spent several months in a hospital while suffering from some intestinal disease. When he came out of the hospital in April, his tenants and those who knew him well began to notice changes in him. He took to the use of intoxicating liquor and especially beer and wine, claiming that he had been told in the hospital that such use would be of benefit to him. He seems to have purchased and used a great deal of bottled drinks between that time and the August following. He had been a quiet and silent man; he became nervous and talkative. When his pastor remonstrated with him for his drinking, he threw off all religious restraints; he had been close and became somewhat liberal. He bought some candy for a little girl, and this gift was thought by his friends to indicate a great change. He invited a nephew and his family to ride with him on a Sunday afternoon and hired a horse and carriage to take them out, and apparently they were not used to such an attention from him. He began to talk and plan as if he were wealthy. Many of his plans and sayings were unwise and some of them were foolish. He grew worse in these respects up to the 10th of August and was sometimes at least much under the influence of liquor. On the other hand, he made at least one advantageous and shrewd purchase of real estate during this period. He collected his own rents and attended to the repairs on his property. He put a bath room in one house and then raised the rent $3 per month and the tenant concluded he was insane. In a word he attended to all his business affairs properly and apparently shrewdly. His physician, who treated him during May and June, testified that he saw no evidence of insanity during that period. In the end he did become insane and was so adjudged on August 10, nearly two months after he bought the property from appellee and gave the notes and mortgage in question. In view of the fact that he properly transacted his regular business

and that his physician saw no evidences of insanity in May and June, 1905, we are of opinion that this purchase and mortgage was properly sustained, under the rules laid down in Ring v. Lawless, 190 Ill. 520, and Martin v. Harsh, 231 Ill. 384, and in the authorities cited in those cases.

Appellants introduced some evidence tending to show that the premises were worth much less than the $3,905 which Hendrickson agreed to pay for them. There is, however, a clear preponderance of evidence that they were worth about $4,000. The court therefore properly found that Hendrickson was not overreached or defrauded. It is to be noted in this connection that there is no proof that either appellee or Oakleaf or Miss Mitchell or Mrs. Crosby had been previously acquainted with Hendrickson or knew of his illness in the hospital or of the change in his disposition and habits or of any of those eccentricities which terminated in insanity.

Appellants introduced in evidence proof that on November 5, 1906, which was before the filing of the original bill in this case, the administrator in Hendrickson's estate filed a petition in the County Court of Rock Island county for the sale of real estate to pay debts, to which he made appellee and Miss Mitchell and Mrs. Crosby and others defendants, in which he sought to have said notes and mortgage declared null and void and set aside so far as they were liens upon the property in Rock Island. Appellants claim that this proof showed that the County Court first acquired jurisdiction to determine the matters involved in this case and therefore the Circuit Court did not acquire jurisdiction by virtue of the original bill and the substituted bill of complaint in this case, and that the decree is without jurisdiction. It is a sufficient answer to this position to say that no such defense is suggested in the answer of appellants to the original bill or to the substituted bill, and that proof without allegations does not avail; and also that the petition in

the County Court did not seek to set aside the mortgage and notes as to the Moline property, and did not offer a conveyance back of the Moline property, and did not offer to account for rents collected by the appellants thereon; and further, that appellants filed a cross-bill in this case in which they asked a decree of this court setting aside the entire transaction, and thus the appellants not only did not deny the jurisdiction of the Circuit Court, but expressly invoked it.

We find no reversible error in the record. The decree is therefore affirmed.

*Affirmed.*