### McIlroy *v.* Rivercomb.

### Opinion delivered March 1, 1920.

Vendor and purchaser—mental incapacity.—A contract of sale will not be set aside because the vendor at times displayed childishness and lack of mental vigor, but it must be shown that at the time of the contract she was mentally incapable of acting intelligently in matters of that importance.

Appeal from Washington Chancery Court; *Ben F. McMahan,* Chancellor; reversed.

*J. W. Grabiel* and *John Mayes,* for appellant.

The decree is against the clear preponderance of the testimony. It fails to show that appellee was mentally incapable of acting intelligently in matters of business, and the burden was on her to show this. The evidence shows that plaintiff had no cause of action and no right to recover. 110 Ark. 416; 60 *Id.* 39; 14 R. C. L. 1307, § 480. Appellee was a life tenant in possession, and it was her duty to pay the taxes, etc. 1 Washburn on Real Prop. (4 Ed.), 126. Appellee was competent to transact business and was not overreached or unduly influenced. 44 W. Va. 612; 67 Am. St. 788. Her health and mind were not seriously impaired, and she was capable of transacting business. 8 R. C. L. 944-5, §§ 20-21; 115 Ark. 430; 123 *Id.* 166. The return of the $500 was only an attempt to correct a mistake. Incapacity to transact business affairs is not proved. Cases *supra.* The findings are clearly against the evidence.

*B. R. Davidson* and *O. P. McDonald,* for appellee.

Appellee had not the capacity or reason or judgment to comprehend the business matters she attempted. She was too weak in mind and body to guard herself against imposition or resist the undue influence used. 15 Ark. 556. The evidence shows that she was frail and delicate, old with weak mentality and unfamiliar with business, and she trusted too much to her friends and she was unduly influenced and overreached, as she was mentally incapacitated. Courts do not relieve against mistakes of law. 131 Ark. 499-500. The findings of the chancellor are right, and the decree should be affirmed.

McCulloch, C. J. Appellee's husband died intestate and without issue many years ago, owning a lot or tract of real estate in the city of Fayetteville, Arkansas, which he and appellee occupied as their home, and appellee has continued to occupy it as her home since the death of her husband. She acquired an undivided one-half interest in the fee by purchase from two of her husband's collateral heirs. The house which constituted the dwelling of appellee's husband is still situated on the tract in question, but is, to a considerable degree, dilapidated and out of repair. On May 7, 1912, appellee, for a cash consideration, sold and conveyed to appellant an undivided three-fourths interest in a strip of land off the aforesaid tract of land, and on May 9, 1912, she conveyed to appellant an undivided three-fourths interest in still another strip off the tract. On November 7, 1914, appellee executed to appellant a third conveyance for an undivided three-fourths interest in an additional strip of the land. On April 14, 1917, appellee entered into a written contract with appellant whereby she agreed to sell to him an undivided three-fourths in the residue of said tract, the part on which the dwelling is situated, for the sum of $500, of which $300 was paid in cash, and the remainder was to be payable in installments. There was a stipulation in the contract that appellee should have the use and enjoyment of the premises for the remainder of her life,

but should keep the taxes and improvement taxes paid and keep the premises insured for appellant's benefit.

At the time of the execution of these conveyances by appellee to appellant, and at the time of the execution of the aforesaid contract between the parties, they were under the impression that appellee had an undivided three-fourths interest in the property, but afterward discovered that they were mistaken and that she was the owner of only an undivided one-half of the property in fee, subject to her own homestead and dower interest. After discovery of the mistake, appellee paid over to appellant the sum of $500 by way of reimbursement for the difference in the purchase price between an undivided one-half and an undivided three-fourths interest. This payment was made by appellee to appellant in August, 1917, in the form of a check on a local bank, given at her own residence.

The present action was instituted by appellee on April 16, 1918, to cancel the contract of April 14, 1917, and also to recover the sum of $500 paid as aforesaid to appellant in August, 1917, on the alleged ground that at the time of those transactions appellee was mentally incapable of conducting any business transactions. Appellant answered, denying that appellee was lacking in mental capacity or that there was any unfairness or advantage taken by him in the transactions. The chancellor made a finding of facts in favor of appellee and decreed cancellation of the contract of sale referred to on condition that appellee refund the consideration received. The court also found in favor of appellee for the recovery of the sum paid by appellee in reimbursement of the difference in the purchase price of the interests in the land.

A very voluminous record is presented for our consideration, which involves merely the determination of the question of fact concerning the mental capacity of appellee at the time she executed the contract with appellant and at the time that she refunded the money to him.

It would serve no useful purpose to discuss the testimony in detail.

There are numerous witnesses whose testimony tends in more or less degree to establish the fact that appellee was lacking in mental and physical vigor at the time of the transactions in controversy, and much of the testimony tends to show that she was lacking in sufficient mental capacity to enable her to conduct the transaction intelligently. On the other hand, there were a large number of witnesses introduced who testified that they were well acquainted with appellee, and that, while she was far advanced in years and physically weak, her mental capacity was about normal, or at least that she was possessed of sufficient mental capacity to intelligently transact business. Appellee is more than seventy years of age, and the testimony undoubtedly establishes the fact that she has for several years been in a poor state of health and is physically weak. According to the testimony of a number of witnesses, her mentality is below normal, but we are of the opinion that, according to the clear preponderance of testimony, both in weight and numerical strength, appellee was not lacking in sufficient mental capacity to fully understand the transactions which she conducted with appellant.

She was not a woman of any business experience, so far as disclosed by this record, but she was capable of fully comprehending the extent and importance of the sales of property to appellant, and she was fully conscious of what she was doing when she refunded the sum of money sufficient to make up the difference between the three-fourths interest, which she thought she owned and conveyed, and the one-half interest which she in fact owned. The burden was on appellee to establish her case, and it was not sufficient merely to show that from time to time she displayed childishness and lack of mental vigor, for it devolved on her to prove that at the time she conducted the transactions she was mentally incapable of acting intelligently in matters of that importance.

Our conclusion, therefore, is that the decree of the chancellor is against the preponderance of the testimony, and it is, therefore, reversed and the cause is remanded with directions to dismiss the complaint for want of equity.