EARL v. EARL.

Opinion delivered November 1, 1920.

1. DESCENT AND DISTRIBUTION—ANCESTRAL ESTATE.—The partition among heirs of ancestral property does not deprive such property of its quality of being an "ancestral estate."

2. DESCENT AND DISTRIBUTION—ANCESTRAL ESTATE.—The property of an intestate does not possess an ancestral quality where acquired by the intestate with the proceeds of ancestral property or by exchanging ancestral property therefor, under Kirby's Digest, § 2709, providing that a widow of one dying childless shall be endowed in fee simple of one-half of his real estate where said estate is a new acquisition and not an ancestral estate.

3. DESCENT AND DISTRIBUTION—ANCESTRAL ESTATE.—Where a father contracted to purchase land, and paid most of the purchase money, and assigned the contract to his two sons who finished paying the purchase money and took deed, they acquired title by purchase, and not as an ancestral estate.

4. DESCENT AND DISTRIBUTION—"ANCESTRAL ESTATE" DEFINED.—For land to be "ancestral," within Kirby's Digest, § 2709, it must come wholly from the ancestor, and without pecuniary equivalent from other source.

5. HOMESTEAD—ARBITRARY ALLOTMENT.—Where the owner of three lots built a house on the north thirty feet of the three lots, and used the second story for a home, renting the first story for business purposes, his widow was entitled to claim such house as her homestead.

Appeal from Conway Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

STATEMENT OF FACTS.

This suit was brought in equity by Wilma Earl, as widow, against the heirs at law of O. D. Earl, deceased, to have her dower allotted to her. O. D. Earl died intestate on September 4, 1919, in Conway County, Ark., owning the property involved in this controversy, which is situated in said county. He left no lineal descendants, but was survived by his widow, who is the plaintiff, and by his brothers, the defendants, who are his sole heirs at law.

It was the contention of the widow that certain of the property described in her bill was a new acquisition,

and that therefore she was entitled to one-half of it in fee simple as dower. On the other hand, the heirs contend that this property was an ancestral estate, and that the widow only took as dower a life estate in one-half of it. It was also contended by the widow that she was entitled to a homestead interest in certain lots in the town of Morrilton, and her contention in this respect was disputed by the heirs.

The chancellor found the issues in favor of the plaintiff, and a decree was entered accordingly.

To reverse that decree the defendants have prosecuted this appeal.

*Reid, Burrow & McDonnell,* for appellants.

The undisputed testimony shows that J. W. Earl purchased the Nutt place and gave it to L. M. and O. D. Earl. A gift by the father to his sons is clearly shown. 19 Ark. 398; 51 *Id.* 530. He also gave his sons, and conveyed to them, lots 4 and 5 in block 4 and lots 11 and 12 in block 3, and part of lot 4 in block 3, described in the note and deed. The decree is erroneous in that material parts of the property were ancestral and Mrs. Earl, the widow, was only entitled to her homestead and dower therein as defined at common law. An ancestral estate follows the blood of the ancestor. 19 Ark. 398 is controlling here.

The estate came by gift and goes to those of the blood of the ancestor, the defendants in this case. 85 Ark. 86; 129 *Id.* 573; 29 *Id.* 418. The contract with the railroad by which J. W. Earl purchased the Nutt place created an estate descendible to his children. 66 Ark. 167; 51 S. W. 64; 104 Ark. 23; 148 S. W. 254; 62 *Id.* 583; 156 *Id.* 433; 20 *Id.* 250; 56 Ark. 470. The chancellor erred in holding the entire estate to have been a new acquisition.

*Strait & Strait,* for appellee.

1. The town lots and the forty acres in the country were a new acquisition and under our statute the widow was entitled to one-half in fee simple as her dower, and

the chancellor so found. 18 C. J. 819; 39 L. R. A. (N. S.) 956.

2. Where a deed recites a valuable consideration, the court will not hear testimony to question it unless for fraud or mistake. 125 Ark. 441; 123 *Id.* 532; 66 *Id.* 645; 82 *Id.* 492. See, also, 22 *Id.* 313; 29 *Id.* 277; 22 *Id.* 482, 525.

Where the recitals of a deed are plain and unambiguous, its construction is one of law for the courts, and they will not consider parol or other extrinsic testimony to refute it. 103 Ark. 425; 28 *Id.* 282; 68 *Id.* 282; 44 Am. Dec. 706; 20 L. R. A. 100. It is safer after the lapse of a long time to let instruments of writing speak for themselves rather than trust to the uncertain memory of witnesses. 104 Ark. 312; 44 *Id.* 365.

Even where the recital of a consideration is attacked for fraud, the recital is most strongly against the grantor and can only be overcome by satisfactory proof. 3 Ark. 18; 53 *Id.* 107; 27 *Id.* 518; 111 *Id.* 220. See, also, 104 Ark. 31.

The decree is in accord with the great preponderance of the testimony. The property of an intestate is not ancestral where acquired with the proceeds of ancestral property or where acquired by exchanging ancestral property therefor. 18 C. J. 819; 39 L. R. A. (N. S.) 956.

HART, J. (after stating the facts). Under section 2709 of Kirby's Digest, if the husband dies leaving a widow and no children, such widow shall be endowed in fee simple of one-half of the real estate where said estate is a new acquisition and not an ancestral estate, provided that if the real estate of the husband be an ancestral estate, she shall be endowed in a life estate of one-half thereof as against collateral heirs.

There was a dispute between the widow and the brothers of the decedent, who are also his heirs at law, as to whether certain town lots and forty acres of land in the country were an ancestral estate or a new acquisition. The widow contended that the property just re-

ferred to was a new acquisition, and that therefore under the statute she was entitled to one-half of it in fee simple as her dower. The chancellor so found, and the correctness of the decree in this respect is challenged by the defendants.

L. M. Earl was a brother of O. D. Earl, and is one of the heirs at law of O. D. Earl, deceased. In his lifetime O. D. Earl formed a partnership with his brother, L. M. Earl. The latter was a witness in this case. According to his testimony, lots 10, 11 and 12, in block 3, in the city of Morrilton, and lot 4 in block 3 in said city, were given to them by a deed from their father. A money consideration was recited in the deed, and their note was given for the amount thereof. The transaction however, was intended as a gift by their father, and the note was never paid, although payments are marked on the note. After the death of their father, L. M. Earl and O. D. Earl divided their property. In the division, the east half of lot 4 and lots 10, 11 and 12, all in block 3 in the city of Morrilton fell to L. M. Earl. There was a business house on the east half of said lot 4 called the Whitley & Greer building. On the west half of said lot 4 there was situated a drug store, and this property was allotted to O. D. Earl. Subsequently L. M. Earl exchanged the east half of lot 4 on which was situated the Whitley & Greer building for the west half of lot 4 on which was situated the drug store. In the exchange L. M. Earl also conveyed to O. D. Earl lots 10, 11 and 12 in said block 3 and received $2,000 in cash therefor.

In the first place, it is contended by counsel for the plaintiff that, in determining whether an instrument for the conveyance of land is a deed of purchase or a deed of gift, we may look to its recitals, and that a recital in such deed that the conveyance by the grantor to the grantee is made in consideration of a named sum of money received by such grantor from the grantee is of the essence of the deed, and that it is not competent to show by parol proof that in fact such deed was a deed of gift. It will be remembered that the deed of these lots

to L. M. Earl and O. D. Earl from their father, recited a money consideration, and that L. M. Earl testified that their father intended the instrument to be a deed of gift and that no purchase money was actually paid to their father by them. Waiving a determination of this question, we think the decree of the chancellor is correct for another reason, which we will now proceed to give.

It will be noted that when L. M. and O. D. Earl divided their property, the said lots 10, 11 and 12, in block 3 and the east half of lot 4, block 3, fell to L. M. Earl. Conceding that this was ancestral property, the result of this partition would be that it still continued ancestral property. The reason is that no new estate was acquired by either of them by the partition of the property. They continued after the partition in the same privity as before, and the division did not make any alteration in the estate which came to them by gift or descent. *Martin* v. *Martin,* 98 Ark. 93. The record, however, shows that subsequently L. M. Earl exchanged these lots with O. D. Earl for a part of another lot and for $2,000. This had the effect to make the property a new acquisition. The property of the intestate does not possess an ancestral quality where it was acquired by the intestate with the proceeds of ancestral property, or where the property was acquired by exchanging ancestral property therefor. 18 C. J., § 20, p. 819; *Martin* v. *Martin,* 98 Ark. 93; *Brower* v. *Hunt,* 18 Ohio St. Rep. 311; *Armington* v. *Armington,* 28 Ind. 74; *Terry's Appeal,* 28 Conn. 339, and *Dudrow* v. *King* (Md.), 39 L. R. A. (N. S.) 956. An ancestral estate means the identical estate that so comes to the intestate, and not an estate that may have been substituted for it. Where a child sells the estate which he inherits from his father, or which is given to him by his father, he can no longer be said to have the estate which came to him from his ancestor, and the fact that he exchanged that estate with his brother for another estate which his brother received from their father can not make any difference. The title to the lots in question at last came to O. D. Earl by a deed

from L. M. Earl, and the character of the consideration can not alter the fact, making that a title by devise or gift from the ancestor which was in fact a title by deed from the brother. Without the deed from L. M. Earl, O. D. Earl had no title to these lots, for he had previously conveyed his interest in them to L. M. Earl when they made partition of their common property. The title of O. D. Earl, therefore, can not be said to have come directly by devise or gift from his father, and under the statute he must be regarded as a purchaser.

It is next contended that the court erred in holding a forty-acre tract in the country as a new acquisition instead of an ancestral estate. The father of O. D. Earl contracted in writing with the railroad company for this tract of land, but received no deed therefor. He paid most of the purchase money, and then assigned his contract of purchase to his sons, O. D. and L. M. Earl. They finished paying the purchase price of the land and received a deed directly from the railroad company pursuant to the terms of the contract. In the division of the property between L. M. and O. D. Earl, this forty-acre tract fell to O. D. Earl. It will be noted that the father never had the legal title to this land, but only an equitable interest therein. The legal title was conveyed directly by the railroad company to L. M. and O. D. Earl when they paid the balance of the purchase money due the railroad company. In determining questions as to the descent of real property, regard is had to the legal title only, and where the legal title is acquired by purchase and an equity in the property by a gift or inheritance, the legal title and equitable interest at once unite, and upon the death of the owner the descent of the property will be cast as an estate which came by purchase. In order for land to be ancestral in coming by gift or descent from the father, it must come wholly from the father and without any pecuniary equivalent from any other source. O. D. Earl only acquired an equitable interest in the land from his father and acquired the legal title immediately from the railroad company when he

and his brother paid to it the balance of the purchase money. Hence this property was, also, a new acquisition. *Martin* v. *Martin,* 98 Ark. 93; *Hill* v. *Heard,* 104 Ark. 23; *McElwee* v. *McElwee,* 142 Ark. 354, and *Higgins* v. *Higgins,* 57 Ohio St. 239.

To sustain their contention, much reliance is placed by counsel for the defendants on the case of *Galloway* v. *Robinson,* 19 Ark. 397, and similar cases. In that case the land was purchased and paid for by the father. The deed was made directly from the vendor to the son, and the court held it to be a gift within the meaning of the statute making "all gifts from the father to son" ancestral estates. There was no executory contract to convey, and no question of merger, for the reason that the title both legal and equitable vested in the son at the same time, and no question of inheritance was involved, in so far as the son's title was concerned.

In the case at bar the assignment by the father to the sons of the former's executory contract with the railroad for the purchase of the land gave the sons the father's equitable estate in the land. When the sons paid to the railroad company the balance of the purchase money and received a deed to the land, the equitable estate became merged in the legal estate, which descends according to the rules of law, and the chancellor properly held that the estate was a new acquisition.

Finally, it is insisted that the court erred in fixing the homestead interest of the widow. After O. D. Earl acquired title to lots 10, 11 and 12 in block 3 in the city of Morrilton, he constructed a two-story house on the north end of these lots across all of them. He occupied the second story of the house and operated a business in the lower story. He continued to reside there until he died. He ceased to operate his business after some years, and rented out the lower portion. The plaintiff only claims that portion of these lots which is occupied by this house and the outbuildings. The part of the lots claimed by her is the whole of the north end of the three lots constituting 150 feet and extending to the south 30

feet. The rest of the three lots is occupied by business houses built by O. D. Earl in his lifetime, and are not claimed by the widow as part of the homestead. Thus it will be seen that she only claims as the homestead a part of the lots across the north end 30 feet by 150 feet. They have occupied this as the homestead since the erection of the house. It can not be said that the homestead was laid off in an arbitrary and capricious manner. The part claimed as the homestead does not constitute more than one-fourth of an acre.

Therefore, the court did not err in awarding the homestead as claimed by her. *Gainus* v. *Cannon,* 42 Ark. 503, and *Berry* v. *Meir,* 70 Ark. 129.

It follows that the decree will be affirmed.