NELLIE M. JOHNSON, APPELLANT, V. ALFRED MILLARD ET AL., APPELLEES.

FILED OCTOBER 20, 1923. No. 22357.

1. **Appeal.** This court will presume that the trial court, in arriving at its judgment, considered only competent testimony.

2. **Deeds: MENTAL CAPACITY.** In an action in equity to set aside conveyances of real estate because of the alleged insanity of the grantor, the question is not whether the grantor's mind was impaired, nor whether he was afflicted with some form of insanity, but whether the powers of his mind had been so affected by his disease as to have renderd him incapable of knowing and appreciating his property and what disposition he wished to make of it at the time he conveyed it.

3. ———: ———. The evidence examined, and *held* that the grantor, at the time of the conveyances in question, had sufficient mentality to know, and did know and appreciate, what disposition he wished to make of his real estate.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Morsman, Maxwell & Haggart,* for appellant.

*William F. Gurley and Isaac E. Congdon, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE and DAY, JJ., BUTTON and SHEPHERD, District Judges.

Johnson v. Millard.

PER CURIAM.

This case was submitted to the court upon the printed briefs and without argument at a prior sitting of the court. It was ordered resubmitted and that an oral argument be made. The following opinion was prepared, after the former submission, by Button, district judge. The court being satisfied that it makes a proper disposition of the case adopts it. The opinion follows:

Nellie M. Johnson is the niece of Dr. George L. Miller, deceased. She brings this action to set aside certain conveyances of real estate made by Dr. Miller during his lifetime. The ground is the incompetency and insanity of Dr. Miller at the time of such conveyances.

We are confronted with a voluminous record, a mass of evidence and exhaustive written arguments and briefs, but have not been favored with oral arguments.

A number of the assignments of error have to do with the rules governing the admissibility of evidence; and much of the discussion in the briefs has to do with these rules. The presumption is that the trial court based its decision on competent testimony only. If there is sufficient competent evidence to convince this court after a trial *de novo* that the decision of the trial court is the decision that should be rendered on the facts it will be affirmed.

There is but one question before us, then, as we see it, and this is: Did Dr. Miller have sufficient mental capacity to know and appreciate what disposition he wished to make of his property at the time he conveyed it?

To answer the above question intelligently we must examine the evidence with care. We do not feel justified in quoting from this mass of evidence to any considerable extent, as this opinion will become too voluminous. When the mental capacity of Dr. Miller has been established, or the want of it has been shown, nothing will be accomplished by pursuing this mass of evidence further.

Dr. George L. Miller, an old man, conveyed the parcel of land involved in this action to one Frances M. Briggs on March 11, 1903. Shortly thereafter these parties were married. At the time of this conveyance the First National Bank of Omaha held a mortgage against this land for about all it was worth. On March 6, 1906, Mrs. Frances Briggs Miller with her husband, Dr. Miller, transferred this parcel of land to Charles T. Kountze and Luther L. Kountze, officers of the above bank, in trust. At this time the indebtedness to the bank had not been paid. Later, however, the indebtedness was paid. At the same time another parcel of ground was conveyed, but it is not involved in this action. Dr. Miller also made a will, but it was never probated. Mrs. Miller died before her husband. There seems to be no competent evidence that the doctor was over-reached or defrauded by any of the parties. It seems, therefore, that the question propounded above presents the only problem for solution.

The trust provides in substance as follows:

That the trustees should handle said land and make whatever improvements were necessary to cause it to yield an income, to collect the income and pay the mortgage, and also pay to Miller and his wife what was necessary for their support and care, and upon the death of Miller and wife to convey the property to Alfred Millard, Charles T. Kountze, and Luther L. Kountze with the income and accumulations in trust and to be conveyed by them, as soon as practicable, to some society or corporation having its principal place of business and field of operations in the city of Omaha, and having for its object the prevention of cruelty to animals or the care of and prevention of cruelties to children and animals, and if there should be no such society in existence, the said trustees should cause one to be organized for the purpose. This property was to be conveyed to such society for the purpose of pro-

ducing an income to be used as above and to be known as "The George L. Miller Memorial."

The conveyance from Miller to Miss Briggs and the conveyance to the above trustees by Mrs. Miller and husband are the conveyances claimed to have been void because Miller was insane at the time. There is no claim that Mrs. Miller was insane.

We will first examine the evidence tending to establish sanity, immediately before, at the time of the conveyance, and during the time intervening between March 11, 1903, and March 6, 1906, and afterwards.

Dr. Miller owned 480 acres of land which he platted into "Seymour Park." On this land he erected a home for himself and family. On this land was sunk an artesian well. From this well there developed Seymour Lake. This lake became valuable for harvesting ice. This situation was brought about by the industry and business sagacity of Dr. Miller, and from this time on for some time we find him making leases with reference to the sale and purchase of ice, bargaining with the Cudahy Packing Company, dealing with the banks, and others, and doing his own business in a seemingly intelligent and sane manner. During the hard time of 1893, Dr. Miller, in common with many others, suffered financial reverses and was compelled to mortgage his land. In the course of time this property, from the income from the ice and otherwise, brought about its own redemption from the mortgages. This was a justification for Dr. Miller's business sagacity and foresight. From 1902 to 1909 Dr. Miller transacted a great deal of business. In 1903 he married. In 1906 he entered into the agreement heretofore mentioned. And for many years he dealt in various ways with many people. In September, 1900, Dr. Miller suffered a mental collapse. From this sickness he recovered so that during the years up to 1909 he transacted his business as above stated. It becomes material to know what some of the people with whom he dealt thought of Dr. Miller's

sanity during the years 1903 to 1906, inclusive, the period involved herein.

John H. Bexton states that from 1901 to 1908 Dr. Miller dealt with the bank of which Bexton was cashier continually. Bexton heard his conversations and knew of his business transactions, and Bexton says he was sane during this period. Charles Kountze, also of the bank, says the same thing; as does Davis, president of the bank. Mann, secretary of the Forest Lawn Cemetery Association, says Dr. Miller was sane during this period. James B. Haynes, C. C. Shriver, Richard L. Metcalf, Harry A. Tucker, Robert W. Patrick, and Abraham L. Reed, all substantial business men of Omaha, all testified to Dr. Miller's sanity during the period of concern in this action. Surely here is sufficient evidence to indicate Dr. Miller's sanity during the time involved herein.

Dr. George L. Miller was adjudged insane in 1900. All the doctors testifying seem to think Dr. Miller was insane in 1900 and that he was suffering from paranoia. There was insanity in the family. His letters indicate an abnormal mentality. Paranoia may be defined as mental unsoundness of a chronic character. It is progressive in character. In the early stages of this disease, and before it has progressed to so aggravated a form, a patient is much better at times than at other times. In other words, the patient has lucid intervals when he is capable of transacting business. We search the record in vain for any witness who had business transactions with Dr. Miller in the years 1903 to 1906 who noticed he was not competent to transact his business. If, then, we accept the conclusions of the doctors as final, still the appellees have shown that Miller was capable of transacting his business at the dates of the two conveyances in question.

Mere inbecility or weakness of mind, however great, is not insanity. There must be a total want of understanding. *Mulloy v. Ingalls,* 4 Neb. 115; *Johnson v.*

*Phifer,* 6 Neb. 401; *Witte v. Gilbert,* 10 Neb. 539; *Dewey v. Allgire,* 37 Neb. 6.

The question in all cases is not whether a person's mind is impaired, nor whether he is afflicted by any form of insanity, but whether the powers of his mind have been so affected by his disease as to render him incapable of transacting business like the business in question at the time of the transaction. *Martin v. Harsh,* 231 Ill. 384, 13 L. R. A. n. s. 1000; 1 Parsons, Contracts (9th ed.) p. *383, and note; *Sands v. Potter,* 165 Ill. 397; *Elwood v. O'Brien,* 105 Ia. 239; *Milks v. Milks,* 129 Mich. 164; *Whitaker v. Hamilton,* 126 N. Car. 465; *Buckey v. Buckey,* 38 W. Va. 168; *Carnagie v. Diven,* 31 Or. 366; *McIlroy v. Rivercomb,* 142 Ark. 354; *Williams v. Reese,* 177 Ky. 679.

Conceding all the doctors say, Dr. Miller was suffering from paranoia or mental unsoundness with delusions. This alone would not render his conveyance void. That paranoia is "monomania" is held in *People v. Braun,* 158 N. Y. 558, and *Flanagan v. State,* 103 Ga. 619. A conveyance is valid, then, if the delusion exists only with reference to an extraneous matter, so that it cannot be reasonably supposed to have influenced the grantor in making the conveyances. *Teegarden v. Lewis,* 145 Ind. 98; *Lewis v. Arbuckle,* 85 Ia. 335; *West v. Russell,* 48 Mich. 74.

However, conceding that Dr. Miller was suffering from paranoia, appellees contend he had a lucid interval which covered, at least, the years 1903 to 1906, inclusive. The burden was upon the appellees to prove this. *Gingrich v. Rogers,* 69 Neb. 527.

The appellees have sustained this burden. The business friends and associates of Dr. Miller, without a dissenting voice, have said that they noticed nothing wrong with his mentality during those years and that he fully understood his business transactions. There is no witness who knew him during those years, who dealt with him or associated with him, who speaks to the contrary. The

man who had acquired this property, planned to make it yield an income, and succeeded, and whom business associates, without exception, pronounced sane, had sufficient mental capacity to know and appreciate what disposition he wished to make of his property. The conveyances involved were valid.

The judgment of the lower court is right, and is

AFFIRMED.