[S. F. No. 6235. Department Two.—April 11, 1913.]

In the Matter of the Estate of THOMAS THOMSON, Deceased. ITALIAN AMERICAN BANK (a Corporation), Claimant and Respondent; OTTO J. CROSSFIELD, Executor, etc., Objector and Appellant; CARL R. THOMSON and JAMES M. THOMSON, Legatees, Objectors and Appellants.

CONTRACT—CONSTRUCTION A QUESTION OF LAW—EXISTENCE OF CONSIDERATION A QUESTION OF FACT.—The construction of a contract, whether it is to be arrived at from a mere reading of the contract itself, or from such reading aided by extrinsic evidence of circumstances and the like, is always a question of law. On the other hand, the question whether or not there is a sufficient consideration to support a contract is always one of fact.

GUARANTY—CONSIDERATION.—A contract of guaranty, not entered into concurrently with the original obligation, requires a distinct consideration to support it.

ID.—FORBEARANCE TO ENFORCE ORIGINAL OBLIGATION—AGREEMENT FOR FORBEARANCE—PROOF OF CONSIDERATION.—In the absence of evidence to the contrary, a declaration in a written contract of guaranty, that the consideration thereof was an agreement by the creditor to forbear the enforcement of the principal obligation, together with the fact that the forbearance was extended, is sufficient to support a finding that the guaranty was based upon a distinct consideration.

Id.—APPLICATION OF PAYMENTS—DEED OF TRUST TO SECURE PERSONAL
OBLIGATIONS AT BANK.—It is held, upon a review of the evidence,
that a certain deed of trust executed to the bank in whose favor
the guaranty in question was made, was intended primarily to
secure the trustor's direct personal indebtedness to the bank,
as distinguished from his contingent liability as indorser upon the
notes, the payment of which were guaranteed, and that the bank
was justified in first applying the proceeds of the trust property
to the extinguishment of the trustor's personal indebtedness.

APPEAL from an order of the Superior Court of the City
and County of San Francisco settling the account of an ex-
ecutor. Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

James Alva Watt, John F. Clute, Charles S. Wheeler, and
John F. Bowie, for Appellants.

D. Freidenrich, for Respondent.

HENSHAW, J.—Thomas Thomson during his lifetime had
given a contract of guaranty to the Italian American Bank,
by which he guaranteed the payment of certain overdue prom-
issory notes, executed by the Hilton Brick Company, a corpo-
ration, to and owned by the Italian American Bank. Thomas
Thomson died testate, his will was probated, and his estate
is in process of administration. After due publication of
notice to creditors, the Italian American Bank presented to
the executor for allowance its verified claim for the sum of
$18,534, with interest, growing out of the above mentioned
guaranty. This claim was allowed and approved both by the
executor and by the judge. When the executor filed his first
annual account showing claims presented and allowed, certain
heirs contested the allowance of the claim of the Italian Ameri-
can Bank under written grounds of contest, and a hearing
was had. The contest asked that the order of the court ap-
proving the claim of the Italian American Bank be vacated
and set aside and the claim disallowed. On January 19, 1911,
the court of its own motion, after the hearing of evidence,
caused to be entered upon its minutes an order to the effect
that "the motion to vacate order allowing claim of Italian
American Bank denied." Thereafter, on January 25th, when

the matter of the settlement of the account of the executor was before the court, the attorney for the contestants, appellants herein, asked leave "to file an amendment to the opposition to the allowance of the claim to conform to the proofs already made, before the matter is finally disposed of by the entering of a decree." Leave was granted, and amended exceptions were filed upon February 1st. Thereafter counsel for contestants moved the court to vacate its order of January 19th, and this motion came on for hearing on March 24th. While that motion was pending, counsel for contestants made another motion for leave to amend, this motion asking for permission to file "amended and supplemental exceptions" based upon the ground that since the filing of the original and of the amended exceptions certain acts and proceedings had been done and taken by the bank which it was necessary for contestants to set up in order that the whole matter might be before the court. The motion to vacate the order of January 19th was denied May 25th. The motion for leave to file the "amended and supplemental exceptions" was granted on June 21st. A demurrer was filed to the amended supplemental exceptions, and this came on for argument on August 28th. On November 6th an order was made sustaining the demurrer. Findings were then presented by counsel for the Italian American Bank, and objections were made by counsel for contestants to the court making any findings, upon the ground that, as the court had sustained the demurrer to the amended and supplemental exceptions, the decision of the court in sustaining the demurrer was a decision of law, to the effect that no legal grounds of contest were shown, and that, while a demurrer to such a contest is not contemplated by law, nevertheless, as the contestants had been sent out of court upon demurrer sustained, the court was not justified in making findings of fact. The proceedings dragged until finally, under the insistence of counsel for appellant, the court permitted the introduction of evidence covering the new matters pleaded in the amended and supplemental exceptions. Those new matters were to the effect that the Italian American Bank, under a trust-deed executed to trustees in its behalf, by E. H. Aigeltinger, had sold all the remaining property so held in trust, and had applied the proceeds of the sale to liquidation of the personal indebtedness owed by E. H. Aigeltinger to

the bank. Thereupon the court made findings denying the
relief asked for by the contest, and upon the settlement of the
executor's account, which settlement was made with the ap-
proval of the claim of the Italian American Bank, this appeal
was taken.

Certain additional and uncontroverted facts are that the
Hilton Brick Company, a corporation, was indebted to the
Italian American Bank upon its promissory notes, indorsed
by E. H. Aigeltinger. The first of these notes was executed
in December, 1905, the last in December, 1906. Aigeltinger
opened a personal account with the bank. On February 5,
1906, he executed a deed of trust to the bank, and a twenty-
five thousand dollar note which declares upon its face that
it is secured by this deed of trust. This twenty-five thousand
dollar note, it manifestly appears, was an evidence of ad-
vances made and to be made. An amended deed of trust was
executed on the fourteenth day of February, 1906, and this
is the deed of trust which appears in the record. It declares
as follows:

"WITNESSETH:

"Whereas the party of the first part (Aigeltinger) is in-
debted in the sum of twentyfive hundred (2500) dollars unto
the party of the third part (the bank) for moneys loaned to
him by the party of the third part, and is desirous of bor-
rowing from the party of the third part, further sums of
money with the privilege of making payment on account, and
of reborrowing from time to time additional sums of money
or moneys, and of keeping and maintaining a running account
with the party of the third part, it being understood that the
total indebtedness of the party of the first part to the party
of the third part on said account shall not at any time exceed
the sum of twenty-five thousand dollars.

"Now for the purpose of securing unto the party of the
third part all moneys now owing and all indebtedness which
at any time hereafter and until the reconveyance of the prop-
erty hereinafter described by the parties of the second part
(the trustees) to the party of the first part as hereinafter pro-
vided for, may be owing by the party of the first part to the
party of the third part together with all interest due or to
grow due thereon, whether said indebtedness be evidenced by
promissory note or notes, bills, or bills of exchange, made,

drawn, accepted or indorsed by the party of the first part, or by overdraft of his open account, with the party of the third part, or otherwise, including all renewal or renewals of promissory note or notes evidencing such indebtedness and including all and every form of writing evidencing such indebtedness, or any part thereof; and in further consideration of one dollar to him in hand paid by the parties of the second part, the receipt of which is hereby acknowledged, the party of the first part has granted, bargained, sold, conveyed and confirmed, and does by these presents, grant, bargain, sell, convey and confirm unto the said parties of the second part, in joint tenancy, and to the survivor of them, their successors and assigns, all those certain pieces or parcels of land lying and being in the city and county of San Francisco, state of California, described as follows, to wit'': etc.

On the seventeenth day of March, 1908, while Aigeltinger was indebted to the bank upon his own notes, and was liable to the bank as an indorser upon the Hilton Brick Company's notes, Thomas Thomson executed his contract of guaranty as follows:

"Whereas the Italian-American Bank is the holder of the several promissory notes executed and delivered to it by the Hilton Brick Co., a corporation, which promissory notes are numbered, dated, payable, and are for the sums' respectively, as follows: (Here follows a list of the notes with their dates and amounts)

"And whereas, said Italian-American Bank has demanded payment of said promissory notes and all thereof and said maker, Hilton Brick Co., has requested said bank to grant to them three months further time for the payment of the principal and interest of said promissory notes and to forbear taking legal proceedings of any kind for the collection of said promissory notes and of the principal and interest due and unpaid thereon, and said bank having agreed to grant such extension provided the payment of said promissory note and the principal and interest due .and unpaid thereon be guaranteed by the undersigned,

"Now, in consideration of the premises and of the promise and agreement of said bank to grant unto said maker, Hilton Brick Co., an extension of three months from date for the payment of said promissory notes and the principal and in-

terest due and unpaid thereon, and to forbear taking any proceedings for said period for the enforcement of payment, the undersigned does hereby guarantee unto said Italian-American Bank, the holder of said promissory note, the payment thereof, and of the principal and interest due and unpaid thereon, three months from and after the date hereof and the undersigned promises and agrees, that if default be made by said maker, Hilton Brick Co., in the payment of said promissory notes or any part thereof at the time last mentioned, the undersigned will pay the same and the principal and interest due and unpaid on all of said promissory notes with previous demand, three months after the date of this guaranty.''

Subsequently, upon November 6, 1908, Thomas Thomson executed a second contract with the bank as follows:

''In consideration of your extending for a period of five months from date, the promissory notes to you of the Hilton Brick Co., the payment whereof was guaranteed by me, which guaranty is in writing and dated March 17, 1908, I herewith deliver to you the note of the San Francisco, Oakland and San Jose Consolidated Railway Co. to the Thomson Bridge Co., for twelve thousand one hundred twelve 50/100 dollars (which note is duly indorsed over to me), as collateral security for my said guaranty to you for the payment of said promissory notes; and I hereby authorize and empower you, upon maturity to collect from said San Francisco, Oakland and San Jose Consolidated Co., the principal and interest owing on said promissory note and apply the same on account of my said guaranty.''

Upon default of Aigeltinger to meet the indebtedness directly owed by him to the bank, the trustees executed the trust, sold the property and applied the receipts from such sales to the extinguishment of that indebtedness.

Under these facts, the contention of appellant is that the guaranty was void because executed without any consideration; that, if not void, the proceeds from the sale of the lands under the trust deed were applicable *pro rata* to the payment of the Hilton Brick Company notes indorsed by Aigeltinger, and that as the bank had not made such *pro rata* application, it had impaired in various ways the rights and remedies of the guarantor, who became thereby exonerated from his contract of guaranty.

The preliminary attack upon the procedure in the probate court has been sufficiently outlined. Whatever irregularities attended it, however inconsistent it may have been to take evidence upon new facts after sustaining a general demurrer, forbidding proof of those new facts, it still remains to be said that no injury was worked to appellants. They were permitted to present their case in full. And, concededly, they come before this court with a record containing all of the material evidence which they had to present. The execution of these various instruments is not questioned, the circumstances surrounding their execution not in dispute. It is conceded that the bank did sell the Aigeltinger property and did apply the proceeds of the sale to the extinguishment of Aigeltinger's direct indebtedness. The questions which are presented are legal ones alone, involving the construction of these contracts.

The court made a finding to the effect that Thomson's contract with the Italian American Bank was entered into upon a sufficient consideration. Appellant contends that this is really a conclusion of law, and that the determination of the scope and meaning of a contract is always a question of law. (*Estate of Donnellan,* 164 Cal. 14, [127 Pac. 166].) It is perfectly true that the construction of a contract, whether that construction is to be arrived at from a mere reading of the contract itself, or from such reading aided by extrinsic evidence of circumstances and the like, is always a construction of law. But upon the other hand it is equally true that whether or not there is a sufficient consideration to support a contract is always a question of fact. But as concerns the contract under consideration, it is of no consequence how the matter be considered. Appellants rely upon section 2792 of the Civil Code. This contract of guaranty, not having been entered into concurrently with the original obligation, requires a consideration to support it. Contestants charge that there was no consideration, but offer no evidence upon this point other than that contained in the contract. Appellants further rely upon the indisputable proposition that while forbearance constitutes a good consideration, that forbearance must be under an agreement to forbear, and that mere forbearance alone is not sufficient. (*Smith* v. *Compton,* 6 Cal. 24; *Shadburne* v. *Daly,* 76 Cal. 355, [18 Pac. 403].) But in

support of the view adopted by the trial court, it is to be remembered that a written contract imports a consideration, and that the burden of showing a want of it is upon the party attacking. (*Williams* v. *Hall,* 79 Cal. 606, [21 Pac. 965]; *Henke* v. *Eureka etc.,* 100 Cal. 429, [34 Pac. 1089]; *Rogers* v. *Schulenberg,* 111 Cal. 281, [43 Pac. 899].) Moreover, there is no question about the forbearance, and the first contract of guaranty declares that that forbearance was under agreement. The consideration thus declared to exist in this contract is not overcome by evidence, and the contract itself stands as an exponent of the facts set forth in it. (*Carpenter* v. *Shinners,* 108 Cal. 362, [41 Pac. 473].)

Equally do we think the court was justified in its conclusion and determination that the Aigeltinger trust-deed was given primarily for Aigeltinger's direct personal indebtedness as distinguished from his contingent liability upon the Hilton Brick Company notes. The circumstances of the transaction, as well as the internal evidence of the trust-deed itself, all bear witness to this. It was Aigeltinger's personal account which he was thus securing. It was the Aigeltinger twenty-five thousand dollar note which bore upon its face the declaration that it was secured by the trust-deed. And while it may be conceded that the terms of the trust-deed are broad enough to include the contingent liability of Aigeltinger upon the Hilton Brick Company note, yet it is not without significance that there is no express mention made of that liability, whereas there are many declarations as to the immediate and primary purpose of the trust-deed,—namely, that it was to secure the personal liability that might arise under his commercial account.

Such being the meaning of the trust-deed, it follows that the Italian American Bank was justified in making first application of the proceeds of the trust property to the extinguishment of Aigeltinger's personal debt. And herein it is to be borne in mind that Thomson was not guaranteeing Aigeltinger's personal debt, but was guaranteeing the debt of the Hilton Brick Company, upon whose notes Aigeltinger was merely an indorser.

The orders appealed from are therefore affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.