## Sherman *v.* Sherman.

### Opinion delivered June 11, 1923.

1. HUSBAND AND WIFE—VALIDITY OF SEPARATION AGREEMENT.—An agreement of separation between husband and wife in which their property rights are settled is valid and binding between the parties, and the courts will not regard such contract as avoidable unless the conduct of the parties is such that they themselves so regard it.

2. HUSBAND AND WIFE—SEPARATION AGREEMENT—ANNULMENT.— Where the parties to a valid separation agreement afterwards live together as husband and wife and their conduct is such that no other reasonable conclusion can be indulged than that they had set aside or abrogated their agreement of separation, then such agreement will be held to have been annulled by the parties to it, and their marital rights will be determined accordingly.

3. HUSBAND AND WIFE—SEPARATION AGREEMENT—ANNULMENT.— Evidence *held* to show that a separation agreement was annulled by the acts of the parties.

4. DOWER—INTEREST OF SURVIVING WIDOW.—Where a husband died leaving personal property and also real property not ancestral in character, and no children or debts, his widow was entitled to one-half of the personal property absolutely, to his homestead for her life, and in addition to one-half of his real property in fee simple.

5. ADOPTION—PAROL AGREEMENT—EFFECT.—A parol agreement by one to adopt a child will not bind his subsequently married wife, who was not a party to such agreement, so as to deprive her of her right to take an undivided one-half interest in her deceased husband's real estate. ·

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; affirmed.

STATEMENT OF FACTS.

Mrs. N. E. Sherman brought this suit in equity against D. H. Crawford, as administrator of the estate of

J. W. Sherman, deceased, and Frank Gould Sherman, to have her dower in her deceased husband's estate allotted to her.

The suit was defended on the ground that she had entered into a separation agreement with her husband in which she had relinquished her right to dower in his estate. Another defense was that Frank Gould Sherman was the adopted child of said J. W. Sherman, and that the widow was not entitled to dower as if her husband had died leaving a widow and no children.

It appears from the record that Frank Gould Sherman is thirty-one years old, and resided in Michigan at the time J. W. Sherman died. W. J. Gould is his father, and lives in Nebraska, where he has resided for thirty-seven years. Some time in March, 1891, when Frank Gould Sherman was about eighteen or twenty months old, J. W. Sherman proposed to his father that he would take the child and bring him up and treat him as his own child. W. J. Gould agreed to this, and turned Frank Gould Sherman over to J. W. Sherman to be raised as his own son. They neglected to take out adoption papers, but the child lived with Sherman after that time. J. W. Sherman lived in the State of Nebraska for eleven or twelve years after he took Frank in 1891, and always treated him as his own son. Thereafter Frank went by the name of Frank Gould Sherman. He has never lived with his father since that time.

The testimony of W. J. Gould was corroborated by that of other persons who lived near them at the time J. W. Sherman agreed to adopt Frank.

J. W. Sherman and his wife were very much attached to Frank while they lived in the State of Nebraska. After they left the State of Nebraska Mrs. Sherman died, but Frank continued to live with J. W. Sherman. In 1917, J. W. Sherman married again in the State of Texas, and Frank Gould Sherman continued to reside with him. J. W. Sherman and his wife then left the State of Texas and went to reside in Arkadelphia, Ark.,

in April, 1919, and lived there until J. W. Sherman died in January, 1922. At the time of his death J. W. Sherman owned certain real and personal property in Arkadelphia, Ark. After they moved to Arkansas, Frank Gould Sherman left them and went to Michigan to reside. On the 22d day of October, 1919, J. W. Sherman made a will, leaving all of his property to Frank Gould Sherman, whom he called his adopted son.

On the 14th day of April, 1921, J. W. Sherman and his wife made an agreement of separation, which is as follows: "The parties to this agreement are J. W. Sherman and Mrs. N. E. Sherman, who were married in the State of Texas on September 24, 1917, and have since resided together as husband and wife, and who are now residents and citizens of Arkadelphia, Arkansas, and who have for a long time been mutually incompatible to each other, and who both mutually agree that it is impossible for them to live together longer as husband and wife, and who mutually agree that it is better for both of them to enter into this separation agreement, and in the future to live separate and apart from each other. The terms of this agreement are as follows, to-wit: The said Mrs. N. E. Sherman, being the owner of a residence property situated at the northwest corner of Third and Main Streets in the city of Arkadelphia, Arkansas, and the same being in need of certain repairs, the said J. W. Sherman agrees to recover said house, except the porches, with a new shingle roof, to repaper two rooms and the bathroom, and to repaper two other rooms overhead; he further agrees to pay off, for the benefit of Mrs. N. E. Sherman, the mortgage held on said property by the Midland Savings and Loan Company of Denver, Colorado. The said Mrs. N. E. Sherman is to have all of the furniture and all of the tools and implements about the house where they now live, except all clothes of the said J. W. Sherman, and all books, and dishes and bedding which belonged to the said J. W. Sherman at the time of their marriage, and typewriter, which property

shall be and belong to the said J. W. Sherman, and he shall be privileged to remove the same from their said residence in a reasonable time. Mrs. N. E. Sherman agrees to remove all of her property and furniture from the residence they now occupy in a reasonable time. Both parties mutually agree with each other that they each waive all right that either may have in the property of the other owned by the other at this time, or at any future time, and to join in the execution of any deed or instrument conveying the property of the other that may be necessary to the conveyance of a good title to said property, without any claim or demand of or for any interest therein, or any consideration for so joining in the execution of any such deed or instrument. The said J. W. Sherman agrees to remove his residence from the city of Arkadelphia within a reasonable time, and shall not make said city his residence so long as it shall be the place of residence of the said Mrs. N. E. Sherman. Each of the parties hereto mutually agree to waive any cause of divorce that either may have had against the other in the past, and agree that neither will prosecute a suit for divorce. Each acknowledges that the considerations herein mentioned are valuable and are mutually accepted and agreed to as the considerations and stipulations for this agreement of separation.''

Pursuant to this agreement J. W. Sherman made the repairs on the property of his wife as specified in the contract. J. W. Sherman and his wife never separated, but continued to live together as husband and wife until he died. J. W. Sherman was sick for four or five weeks before he died, and his wife nursed him during his last illness. They lived together in the home of J. W. Sherman until his death.

Other witnesses testified that J. W. Sherman and his wife lived at his home in Arkadelphia from the time they moved there until he died.

Other facts will be stated or referred to in the opinion.

The chancellor found that the real estate owned by J. W. Sherman at the date of his death was a new acquisition, and consisted of certain personal property and his homestead in the town of Arkadelphia, Ark., upon which he resided with his wife at the time of his death.

The chancellor also found that J. W. Sherman died leaving surviving him his widow but no children.

It was decreed that the plaintiff, as his widow, was entitled to a homestead in the real estate and also to a one-half interest therein in fee simple, as her dower. She was also decreed dower in the personal property of J. W. Sherman, under the statute: It was decreed that Frank Gould Sherman took the remainder of the estate under the will of J. W. Sherman, deceased.

Frank Gould Sherman has duly prosecuted an appeal to this court.

*D. H. Crawford* and *McMillan & McMillan,* for appellants.

The verbal contract of adoption carried out in accordance with its terms was effectual to fix the relation of appellant as an adopted child as though he had been legally adopted. The evidence is conclusive as to the contract and terms of adoption. 162 Mo. 11, 85 A. S. R. 480; 15 Atl. (N. J.) 249; *Kolka* v. *Rosicky,* 41 Neb. 328, 43 A. S. R. 685. Appellant Sherman was entitled to specific performance of the contract. *Naylor* v. *Shelton,* 102 Ark. 30; 44 L. R. A. (N. S.) 773; 133 N. W. (Neb.) 183; 60 A. S. R. (Mo.) 270. The agreement to adopt being proved, the child has the status of a natural or legally adopted child as to property rights. Case is governed by principle illustrated in 102 Ark. 42; 126 S. W. (Mo.) 522; 239 S. W. (Mo.) 505. An adopted child is a "child" in the sense of § 4518 Revised Statutes of Missouri, which is similar in effect to § 3536, C. & M. Digest. 33 S. W. (Mo.) 443. See also 21 S. W. 82; 153 Mass. 525, 27 N. E. 768; § 255, C. & M. Digest; 107 N. W. (Neb.) 996. The contract of adoption was partly performed in this state, and will be enforced here. The

agreement in Nebraska to adopt fixed the status of appellant as an adopted child which followed the parties into Arkansas. 129 Mass. 243, 37 Am. Rep. 321; note to 118 A. S. R. 685; 90 Ark. 364. If appellee can reject the will she will only have a widow's rights in deceased's estate as though appellant were his child. The separation agreement fixed the measure of the widow's interest in property acquired during continuance of marital relation. Ann. Cas. 1917-A 65; 19 C. J. 507; 67 Ark. 15; 124 Ark. 167; Ann. Cas. 1917-A 48; Ann. Cas. 1917-A 58; cases cited in 19 C. J. 512, note 76. Acknowledgment was not necessary to validity of contract under act 1915. Since Constitution of 1874 in effect wife can convey title to separate property by unacknowledged deed. 34 Ark. 160; 39 Ark. 366, act 66, Acts of 1919; 147 Ark. 12. The consideration of separation contract was adequate (97 Fed. 367), and she kept and enjoyed the consideration till the death of her husband. Evidence does not show any abrogation of agreement by her. 123 Ark. 268; 112 Ark. 483. Her testimony as to declarations of deceased should not have been admitted. No implied abrogation of the contract. Burden was on appellee to show it was abrogated. 116 Ark. Living together would not show it, since passage of act of 1915 as amended by act 66, Acts 1916; 116 Ark. 60; 97 Fed. 367; 125 Md. 113; Ann. Cas. 1917-A 48; 179 Ky. 300, 2 A. L. R. 689; 94 Ark. 461. No written reconveyance of the lands, none of the consideration returned. 149 Ark. 533; 106 Ark. 332. Elements of equitable estoppel in this case prevent her claiming the property. 137 Ark.; 136 Ark. 414; 199 Pa. 269; 85 A. S. R. 785.

*Callaway & Callaway,* for appellee.

An oral agreement for adoption of a child in another State cannot have effect to give such child a legal status as an heir in this State, to inherit the property of a decedent and deprive the widow of all the property of the estate she is entitled to under our law providing she shall have one-half when there are no children. Un-

der the Alabama rule children, although actually adopted under the laws of other States, are not entitled to inherit property in Alabama from the adopting parent, each State having exclusive jurisdiction to control the transfer of property therein. This rule has been held not violative of the Federal Constitution. 157 Ala. 424; 189 Fed. 205; 199 Fed. 989; 117 C. C. A. 664. The status of Frank Gould as an adopted child was not fixed in 129 Mass. 243, cited by appellants, which has no application here. The *lex fori* governs, and there is no law in this State authorizing the adoption of a child by contract. 12 C. J., Conflict of Laws, 483; 64 Ark. 29; 113 Ark. 278. J. W. Sherman's domicile at the time of his death was at Arkadelphia, Arkansas, and the law of the domicile at his death controls the succession to his property. 1 Bouvier, 500. The case of 102 Ark. 42 has no bearing on this case. C. & M. Digest, § 3536, provides for the distribution of the estate of a deceased husband who dies ''leaving a widow and no children.'' The separation agreement between J. W. Sherman and his wife, appellee, was abrogated by the parties. 112 Ark. 488.

HART, J., (after stating the facts). There is a division of authorities on the question of whether a parol agreement of adoption whereby a parent surrenders a child to others upon their promise to adopt, rear, and educate it as their own, and to give it the same right of inheritance as a natural child, but which is not consummated by a statutory adoption, will, if otherwise fully performed, be enforced after the death of the adoptive parents. The views which we shall hereinafter express render it unnecessary to decide this question.

An agreement of separation between husband and wife in which their property rights are settled is valid and binding between the parties. The law is that, having entered into a valid separation agreement, the courts will not deem such contract avoidable unless the conduct of the parties is such that they themselves so regarded

it. *Carter* v. *Younger,* 112 Ark. 483, and *Dennis* v. *Perkins,* 129 Pac. (Kan.) 165, and cases cited.

These cases also hold that where the parties to a valid separation agreement afterward come together, and live together as husband and wife, where their conduct towards each other is such that no other reasonable conclusion can be indulged than that they had set aside or abrogated their agreement of separation, then such agreement will be held to have been annulled by the parties to it, and their marital rights determined accordingly.

Tested by this rule, we think that the facts and circumstances of this case warranted the chancery court in finding that the marital relations between J. W. Sherman and his wife never ceased, and that there was mutual forgiveness of the past misconduct on the part of each.

In the first place, it may be said that the agreement of separation shows on its face that it was an indivisible contract. It recites that the parties to it had married in Texas in September, 1917, and had since lived together as husband and wife. It further recites that it is impossible for them to live together any longer as husband and wife. Under the terms of the agreement the husband agreed to make certain repairs on a house belonging to his wife. She agreed to remove all of her property and furniture from his residence in a reasonable time. Each waived any right in the property of the other, and agreed to join in the execution of any deed necessary to convey the property.

J. W. Sherman agreed to leave the city of Arkadelphia and not again live there so long as his wife should do so. The agreement was executed on the 14th day of April, 1921. The parties never, in fact, separated, but lived together in the home of the husband until he died on January 10, 1922. The husband was sick for five weeks, and his wife attended him faithfully during his last illness. The attending physician and their neigh-

bors testified that she conducted herself as a faithful wife towards her husband.

The wife testified that they lived together during all of this time as husband and wife, and that her husband, for the most part, made the repairs on her house himself. According to her testimony, they never separated, and never considered that the separation agreement had any binding force and effect.

The agreement of separation contemplated that he should leave the city of Arkadelphia, where they resided at the time. He not only did not leave, but the parties continued to live together in his home until his death nearly a year later. During all this time there was nothing in their conduct towards each other to indicate to their neighbors that they had separated and were not living together as husband and wife. The husband continued to support his wife, and they discharged their marital duties to each other. This conduct shows an intention on the part of both of them to consider the separation agreement ended in all respects.

The preponderance of the evidence indicates that it was not only their intention to end the contract, in so far as it required them to live apart, but also to annul it as to the settlement of their property rights. Hence the wife became entitled to support from her husband, and was supported by him until he died. She then became entitled to dower in his estate.

The evidence shows that the property in controversy was a new acquisition, and that J. W. Sherman died without having any children of his own. Hence it was the contention of the widow that she was entitled to one-half of his property in fee simple, as her dower, under § 3536 of Crawford & Moses' Digest. *Earl* v. *Earl*, 145 Ark. 559.

On the other hand, it is the contention of Frank Gould Sherman that, even if the separation agreement be deemed annulled, the widow is entitled to only one-third

of the personal property absolutely as her dower, and one-third of the realty for her life only.

The chancellor upheld the contention of the widow, and we think that his decision is correct. In the first place, it may be stated that Mrs. N. E. Sherman was the second wife of J. W. Sherman, and was no party to the agreement to adopt Frank Gould Sherman. That agreement was made during the life of J. W. Sherman's first wife. Frank Gould Sherman was never legally adopted by them. They agreed verbally to adopt him and raise him as their own child. The father of Frank Gould Sherman turned him over to J. W. Sherman and his wife, to be raised by them and treated as their own child. He knew that no statutory adoption was made or undertaken by them. Reliance was placed entirely upon their verbal agreement to take him and care for him as their own child. This they did, and always manifested the like affection for him as parents usually do for their own children.

When the first wife of J. W. Sherman died, Frank Gould Sherman continued to reside with J. W. Sherman. After the latter married again, he continued to reside with them until after they moved from Texas to Arkansas. Frank Gould Sherman then went to Michigan, and resided there until he was summoned back to Arkansas during the last illness of J. W. Sherman. Hence, under the undisputed testimony, he does not occupy the relation of an adopted child, but only stands in the relation of an infant child for whose benefit a parol contract to adopt had been made.

As we have just seen, the plaintiff was not a party to that agreement, and such an agreement could not in any wise operate to bar her dower. The agreement had not been carried into effect when her husband died. Our statute now under consideration gives the widow an absolute estate in the property of her husband, and the interest thus conferred vests immediately in her upon the death of her husband. She takes absolutely an undivided

one-half interest in fee simple, and it is such an interest as immediately vests at her husband's death. *Barton* v. *Wilson,* 116 Ark. 400; *Crowley* v. *Mellon,* 52 Ark. 1; *Jacks* v. *Dyer,* 31 Ark. 334; *Tate* v. *Jay,* 31 Ark. 576, and *McGuire* v. *Cook,* 98 Ark. 118.

J. W. Sherman died seized and possessed of the real and personal estate involved in this lawsuit, and there was no valid lien on it. Mrs. N. E. Sherman had not released or relinquished her dower in any part of said estate. The verbal promise of her husband to adopt Frank Gould Sherman could not have the effect to deprive her of her dower in his estate. She could only do that by some affirmative act on her part releasing or relinquishing her dower, or by some act which would operate as an equitable estoppel against her.

Nothing of this sort is shown by the record, and it follows that the chancellor was correct in holding that she was entitled to dower under the provisions of § 3536 of Crawford & Moses' Digest.

No other issues are raised by the appeal, and it follows that the decree will be affirmed.