[Civ. No. 6235. Second Appellate District, Division Two.—November 1, 1928.]

In the Matter of the Estate of BLAS BENGOCHEA, Deceased. FELICIA BENGOCHEA, Appellant, v. PAUL BENGOCHEA, as Administrator, etc., Respondent.

Canepa & Castrucio for Appellant.

Harry A. Chamberlin for Respondent.

CRAIG, J.—The respondent was appointed administrator of the estate of Blas Bengochea, deceased, who was his brother, and who also was the husband of the appellant herein. Thereafter the latter petitioned the superior court for revocation of the letters of administration, and for appointment of herself as administratrix, alleging that the estate consisted of community property, and that as surviving wife of the deceased she was a competent and proper person for appointment, and had a prior right to act, in such capacity. Respondent admitted the marital relation between appellant and his intestate, but denied the existence of any community property or interest of appellant in said estate, alleging that on or about December 27, 1923, Mrs. Bengochea and her husband, owing to disputes between them, entered into a property settlement agreement in writing, a copy of which was appended to the answer as an exhibit, "in settlement, adjustment and in compromise of all property questions and rights," each agreeing "to execute and acknowledge any and all deeds or instruments of release or conveyance in order to enable such other to sell, convey or otherwise dispose of his or her own real property, free from any apparent right of interest therein."

Appellant filed a reply, denying the allegations, and the contract last mentioned, and alleged that prior to December 27, 1923, she and her husband owned a one-half interest in certain real property and a hotel maintained thereon, of which Paul Bengochea and his wife also owned one-half. She denied the existence of any dispute between the decedent and herself, but alleged that owing to differences between herself and Paul Bengochea, the latter agreed to purchase the share of herself and husband. She further alleged that she was unable to read the English language sufficiently to understand the purport of written instruments; that Paul Bengochea represented the property settlement contract to be a bill of sale, and that as a kinsman, partner, and co-owner of the common property, she believed and relied upon his representations, and therefore signed the same; that such representations were false, were known to Paul Bengochea to be false, and that he knew that she and her husband believed and relied upon them as being true, and thus obtained their signature, but that they would not have signed except for respondent's false and fraudulent representations.

The case was tried before the court without a jury, whereupon findings of fact, conclusions of law, and a judgment were filed and entered in favor of respondent, from which the petitioner appealed, principally upon the alleged ground that the evidence was insufficient to warrant or to support the judgment. The court found that Paul Bengochea was not a partner of the deceased at the time of his death; that the property settlement was executed by appellant freely and was not obtained through false representations or fraud, or through any reliance upon representations of her brother-in-law.

It is contended by appellant that the evidence established, and that the court should have found, that in view of the fact of all the parties being related by blood and by marriage, having been joint owners of the property in question, having resided together, and jointly conducted the hotel business, that there was a partnership between them, and a bond of trust and confidence between appellant and respondent amounting to a fiduciary relationship; that she sold her interest to respondent, but that the alleged property settlement was obtained by respondent through fraud

and deceit, and that the evidence failed to show any differences between herself and her husband.

There is much substantial evidence that all of the parties disagreed. The respondent positively swore that Blas and Felicia Bengochea had many quarrels; that there was dissatisfaction all around as to the management of the business; that appellant felt that she was not receiving her share of the income, or being properly treated; that there were discussions as to which of the parties should purchase another's interest; that finally there was a "row," following which appellant left the premises, the others considered the matter, and upon her return respondent "bought her out for seven thousand five hundred dollars." It is obvious from the record that appellant was illiterate, but it appears from the testimony of various witnesses, including that of her brother, Angel Ardanaz, that the latter understood the English language, and that he was present and explained her desires and advised her at meetings of the family and at the offices of the attorneys who prepared the property settlement. The respondent testified in his own behalf and as a witness for the petitioner that Mrs. Bengochea was desirous of obtaining a property settlement with her husband, and of disposing of her separate interest in the community property; that there was no fraud or deceit, and that she freely and voluntarily lived separate and apart from her husband for some time thereafter. Appellant admitted that she built a home with her own money, and lived alone thereon until her husband came to her shortly prior to his death. It appears that the deceased and his wife divided community moneys in bank, and conveyed to Paul Bengochea and wife all their right, title, and interest in the property in controversy; that respondent resold to his brother, Blas Bengochea, a one-fourth interest, and took back a lease thereof. It was testified that appellant consented to the appointment of respondent as administrator, and requested that none of her property be included in the inventory. The attorney who prepared her petition for revocation of the administrator's letters about five months after the filing of his petition, testified that she made no mention to him of the existence of a property settlement. ▇ Her testimony, while given with difficulty, was nevertheless inconsistent and contradictory, and was flatly contradicted by

other witnesses in all material respects wherein it tended to support her theory of the transaction. The trial court had the opportunity of observing all of the witnesses, and of determining their credibility, of weighing the evidence and deciding the issues presented. Such duties being within its exclusive province, courts of appellate jurisdiction will not, in a case such as that before us, disturb the findings and judgment. (*Stransky* v. *Callan*, 81 Cal. App. 476 [253 Pac. 960].)

■ It appears that the deceased remained with his brother for a period of about six months following the property settlement with his wife and her departure, and that he then expressed a desire to join her, which he did. It is insisted that the property settlement, if valid, was abrogated by the fact of the spouses becoming reconciled and resuming marital relations. It is apparent, however, that appellant sold her community interest to a third person for a valuable consideration, which admittedly was adequate, and that she did not thereafter seek to rescind, nor did her husband ever acquire her share. The point is without merit, and authorities cited in that behalf are inapplicable to the issue.

It is asserted that respondent and the deceased were partners, and that the appointment of the administrator of said estate was contrary to the provisions of section 1365 of the Code of Civil Procedure. But as we have pointed out, there is positive testimony and facts and circumstances sustaining the findings of the court below.

The judgment is affirmed.

Works, P. J., and Thompson, J., concurred.