[Civ. No. 10739. First Appellate District, Division One.—November 10, 1939.]

DOROTHEA MUNDT, Appellant, v. CONNECTICUT GENERAL LIFE INSURANCE COMPANY (a Corporation) et al., Defendants; ELEANOR WRENN et al., Respondents.

Pierce & Sherwin for Appellant.

Cecil N. Lavers for Respondents.

GOODELL, J., *pro tem.*—In September, 1936, Martin C. Wrenn took out a $2,000 policy of insurance on his life in the Connecticut General Life Insurance Company, designating his mother, the appellant, as beneficiary. In November, 1936, he died, and the beneficiary brought this action on the policy, joining as defendants the company and the insured's widow, individually and as administratrix of his estate. The widow filed a cross-complaint, claiming half the insurance money by virtue of her community right, the premiums having been paid out of the insured's earnings. The insurance company paid the $2,000 into court, and, on stipulation, half thereof was paid to the beneficiary. From a judgment awarding the remaining $1,000 to the widow the beneficiary has appealed.

Martin C. and Eleanor Wrenn were married in 1920 and continued to be husband and wife until his death. From August, 1932, until the entry of an interlocutory decree in November, 1932, a suit for divorce was pending between them, and while they were separated they entered into a property settlement. Pursuant to this agreement some $3,500 in bank deposits and certain personal effects were forthwith put into the wife's name, and the real property, together with some personal property, was put into the husband's

name. A few days after the interlocutory judgment was entered the spouses became reconciled and resumed marital relations.

■ As one of the grounds for her claim that all the insurance money should go to her, the appellant invokes the provision in the agreement that all property *thereafter* acquired by either party should be and forever remain the sole and separate property of the party acquiring or receiving it. Appellant argues, first, that this provision remained binding and effective up to the time of her son's death, and that it bars his widow from asserting her community claim to half the insurance money, and, second "that the evidence which proved the reconciliation at the same time disproved the intent of the parties to restore the property to its community status". True, the evidence shows that when the parties became reconciled nothing was done to restore the property (divided pursuant to the agreement) to its former position, but the present litigation is not concerned with that property. The policy in question was given vitality by premiums paid with money earned by the husband almost four years after the reconciliation, so it would seem that the executed parts of the agreement have no particular bearing on the present controversy. The provisions with respect to after-acquired property were, of course, executory. That a reconciliation, followed by the resumption of marital relations, operates to cancel the executory provisions of such a contract seems to be settled. (9 Cal. Jur. 827; *Sargent* v. *Sargent,* 106 Cal. 541, 546 [39 Pac. 931]; *Jones* v. *Lamont,* 118 Cal. 499, 502 [50 Pac. 766, 62 Am. St. Rep. 251]; *Estate of Martin,* 166 Cal. 399, 402 [137 Pac. 2]; *Estate of Boeson,* 201 Cal. 36, 42 [255 Pac. 800].) See particularly *Wells* v. *Stout,* 9 Cal. 479, 498, where the reason for the rule is given as follows: "The object of the deed is to provide for the maintenance of the wife whilst living separately from her husband; but, if reconciliation and cohabitation take place, her maintenance being obligatory upon him, the consideration of the deed fails." The trial court in the instant case found that the "agreement was entered into in contemplation of a divorce to be procured and a separation to be effected" and, further, that no divorce was ever granted, but that there was a reconcilation and resumption of cohabitation, and that the parties had orally annulled the agreement. There is ample

evidence to support these findings. It is claimed by the appellant that the trial court, in finding as it did, disregarded section 1698, Civil Code. This contention is pointedly answered in the case of *Brown* v. *Brown*, 170 Cal. 1, 7 [147 Pac. 1168], as follows: "With regard to the separation agreement made by Brown and wife in 1906, which purported to release her rights in the community and to declare subsequently acquired property the separate property of the person acquiring it, and which it is claimed bars the present action of plaintiff, we need only say that the findings declare that some four months after its execution the parties agreed to become and were reconciled, that they thenceforth for several months lived and cohabited together as husband and wife, and that in pursuance of the agreement to so live they further orally agreed to and did set aside and annul said agreement. This was an executed oral agreement and it was a sufficient cancellation of the previous written agreement of separation. (Civ. Code, sec. 1698; *Pearsall* v. *Henry*, 153 Cal. 314, 325 [95 Pac. 154, 159].)" In the case at bar, however, unlike the Brown case, the resumption of marital relations continued until the husband's death.

The case of *Estate of Bengochea*, 94 Cal. App. 647, 651 [271 Pac. 760], cited by appellant, is not at all in point. There the spouses had become reconciled shortly before the husband's death, it is true, but the wife had "sold her community interest to a third person for a valuable consideration, which admittedly was adequate, and . . . she did not thereafter seek to rescind . . . " Moreover, the court was there dealing with an executed agreement; here, as said above, the trial court was concerned only with the executory part of the agreement in question.

█ Independently of the position just discussed, the appellant contends that there was a valuable consideration (see sec. 172, Civ. Code) moving from her to her son to support the insurance contract in her favor. The court found, however, "that the designation by said deceased of the plaintiff Dorothea Mundt as the beneficiary in said policy of insurance was made without the knowledge or written consent of said Eleanor Wrenn, and was not made for a valuable consideration; that the proceeds of said life insurance policy to the extent of $2,000 are community property". It is claimed that this finding lacks evidentiary support.

The uncontradicted facts are that commencing about the time of the separation and continuing for about three years, the appellant, who lived close to the place where her son worked, served him with breakfast and put up his lunch on each working day. She also did some laundering and mending for him and on a few occasions—presumably during the separation—had him for Sunday dinners. The son at first paid her $1 a week, and later $2 a week. The appellant testified that she at first "kind of refused" to accept the money and the inference may fairly be drawn from the record that she did not consider it much of an obligation on the son's part. She did testify that "I could not board a stranger for that money, I will tell you that" and, further, that he promised to make it up to her some other way, and did not want to owe her anything. He told her two or three weeks before he died of the new policy he had taken out and said that he could not pay her enough for what she had done for him. Without summarizing all the testimony on this subject, it suffices to say that there is ample evidence to support the court's finding. True, the evidence is uncontradicted but the rule is settled that even in such case "if the inferences fairly deducible therefrom are such that different conclusions might rationally be drawn therefrom by men equally sensible and impartial, the conclusion reached by the jury, or the court sitting as such, should be deemed final and not disturbed on appeal. . . . In such case the decision of the trial court . . . is as conclusive as where the conflict arises directly from the evidence." (2 Cal. Jur. 934, sec. 549, and cases cited.) Counsel for respondent aptly says: "The trial court was justified in finding either that the furnishing of the meals was gratuitous, and the giving of money was likewise gratuitous; or that such meals as were furnished were fully paid for." Indeed, one part of appellant's own testimony would, in itself, justify this inference, where she said "He paid me one dollar a week in the beginning and after he paid two dollars and I didn't want no more." Again " . . . but later he laid me two dollars on the table and I said, 'That is plenty, I do not want to rob you; you have no work for years' and he said 'All right, Ma, but I will make it up to you some other way'."

From the appellant's testimony the trial court might well have concluded that she did not consider the $2 a week a

contractual arrangement at all, but rather a token of appreciation, or, on the other hand, that she did consider it a business matter and that she was fully compensated. It was, after all, a question of fact (*Estate of Thomson,* 165 Cal. 290, 296 [131 Pac. 1045]) for the trial court and we cannot disturb it where it is a question upon which reasonable minds might differ.

It is claimed that *Union Mutual Life Ins. Co.* v. *Broderick,* 196 Cal. 497 [238 Pac. 1034], is controlling. The answer is that in the case at bar the court found that there was no consideration for the designation of the mother as the beneficiary. In the cited case, on the other hand, at page 507, after discussing section 172 of the Civil Code and the rule that premiums paid out of community funds impress the policy with a community character, the court says: "This principle, however, has no application to the facts of the instant case, inasmuch as there is evidence in the record tending to support the implied finding of the trial court that the designation of the respondent as beneficiary of the proceeds of the policy was made by the assured for a valuable consideration."

The last point urged by the appellant is stated by her counsel as follows: "May a husband whose wife upon his death inherits community property in excess of $5,000 make a valid gift to his mother of a $2,000 insurance policy which requires monthly premiums of $3.00 to be deducted from his earnings?" From the leading case of *New York Life Ins. Co.* v. *Bank of Italy,* 60 Cal. App. 602 [214 Pac. 61], through the many intervening cases, down to *Travelers Ins. Co.* v. *Funcher,* 219 Cal. 351 [26 Pac. (2d) 482], the only test applied to this problem has been whether the premiums (on a policy issued on the life of a husband after coverture) are paid entirely from community funds. If so, the policy becomes a community asset and the nonconsenting wife may recover an undivided one-half thereof "without regard" [as said in *Dargie* v. *Patterson,* 176 Cal. 714, 721, 169 Pac. 360] "to the amount or condition of the estate remaining in his [the husband's] hands at the time of his death", and we might add, without regard to the disproportionate size of the premium when compared with the face of the policy.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.