SIMPSON, ADMINISTRATOR *v.* WEATHERMAN.

4-9098                                         227 S. W. 2d 148

Opinion delivered February 20, 1950.

Rehearing denied March 20, 1950.

*C. A. Fuller*, for appellant.

*Festus O. Butt*, for appellee.

DUNAWAY, J.   Whether the widow of Silas Weatherman, deceased, is entitled to dower in his estate is the question for decision on this appeal.

Silas Weatherman died in April, 1948, while a resident of Carroll County, Arkansas.   His last will and testament was duly admitted to probate and appellant, Dick Simpson, was appointed administrator with the will annexed.   In his will Weatherman made this provision for his wife:

"SECOND:   To my wife, Louisa Weatherman, I give the sum of Five Dollars, being in full for all interest in my estate, she and I having heretofore made former financial settlement wherein she received all that portion of my estate which she was then, or would hereafter become entitled to."

The remaining provisions of the will are not material to this appeal.

Appellee, Louisa Weatherman, filed a Petition of Intervention renouncing any claim under the will, claiming a widow's share of the estate.   The Administrator answered, setting up as a defense to her claim for dower, a property settlement made between Weatherman and his wife in California on February 9, 1937.

At the time this property settlement was made there was pending in the Superior Court of Orange County, California, a suit for separate maintenance and property settlement filed by appellee.   Under the terms of the property settlement agreement she was to receive property of the approximate value of $30,000, which was more than half of all their community property.   The agreement is a lengthy document, prepared by counsel for the parties, only the pertinent parts of which will be set out.

In the following paragraphs quoted from the agreement "party of the first part" refers to Weatherman, and "party of the second part" to his wife:

"WHEREAS, it is the mutual desire of the parties to this agreement to make a permanent, complete and

final adjustment of all of their property and legal rights of every and any nature whatsoever.

"NOW, THEREFORE, it is hereby contracted and agreed by and between the parties hereto as follows, to-wit:

"(1) The party of the second part, for and in consideration of the covenants and agreements hereinafter contained, does by these presents absolutely and forever relinquish, release, surrender, quit claims, transfer, grants and convey to the party of the first part all the right, title and interest she may now have as a joint tenant, tenant in common or otherwise, and any and all right, title and interest she may now have or hereafter acquire as the wife of the party of the first part in and to all that certain real and personal property described as follows, to-wit:

. . . . .

"(3) And it is further expressly contracted and agreed that neither party hereto may, can or will in any manner or way contest or oppose the probate of the other's will whether heretofore or hereafter made or interfere with the other, their heirs or assigns in the exercise of the rights of property herein stipulated and agreed to.

"(4) . . . and said second party does hereby specifically waive and relinquish any and all right to a probate homestead, out of the estate of the said first party or any other homestead whatsoever.

. . . . .

"(7) And it is further covenanted and agreed that upon the execution of this agreement and the consummation thereof by the delivery of the personal property hereinbefore enumerated, that this agreement shall be, and is, a complete and final adjustment of all the property and legal rights of the parties hereto, and neither party shall, or will hereafter make any other or further claim than herein stipulated and agreed to.

"(8) It is further understood and agreed that a reconciliation between the parties hereto, or future co-

habitation between the parties hereto shall not impair and effect any of the terms and conditions of this contract, but that this contract shall be and become permanent and binding on the parties hereto in spite of any future cohabitation between the parties.''

In accordance with the provisions of the agreement the property specified was conveyed by the parties to each other. Subsequently, Weatherman lived at the family residence in Buena Park, California, from 1937 until 1944, except for periods when he was hospitalized in the Santa Fe Railroad Hospital. There was testimony, including that of the two grown Weatherman sons, that Mr. and Mrs. Weatherman ate at the same table and lived together as man and wife. It was testified that Weatherman paid his wife $30 per month for board. The testimony of one of the sons was that his father agreed to make such payments for board but did not in fact do so.

In 1944 Weatherman returned to his old home in Arkansas where he lived until his death. There was some testimony that his wife would not permit him to come back home. One of the sons admitted that his father had written for his personal effects, all of which were then sent to him in Arkansas. There was no further communication between Silas Weatherman and his family during his lifetime.

Appellee's claim to dower is based upon the contention that the property settlement agreement was abrogated by the subsequent resumption of marital relations and cohabitation of the parties. The validity and legal effect of this agreement are determined by the law of California, where the contract was made and the acts occurred which it is argued abrogated the agreement. We will give effect to the contract in accordance with the law of California unless it is opposed to the public policy of this state.

It is well settled in California that separation agreements, including property settlements, between estranged spouses are valid and enforceable. Such contracts are, however, always subject to judicial scrutiny to determine

whether they were procured through undue influence or fraud on the part of the husband. See *Auclair* v. *Auclair*, 72 Cal. App. 2d 791, 165 Pac. 2d 527. A distinction is recognized between executed and executory features of such agreements in determining whether a resumption of marital relations abrogates the contract made by the parties. The effect of subsequent cohabitation is discussed in the case of *Whitlow* v. *Durst*, Cal. Dist. Court of Appeal, 121 Pac. 2d 810, at page 812:

"The general rule governing the situation is thus stated in 9 Cal. Jur., § 165, pages 827 and 828: 'Subsequent reconciliation coupled with cohabitation in pursuance thereof operates to avoid an agreement for separation, at least, as to all features remaining executory. The law attaches such consequence upon the theory that the consideration for the deed has failed, inasmuch as the maintenance of the wife thereupon becomes obligatory upon the husband. But to avoid a contract of separation, the reconciliation must be permanent and be followed by cohabitation. It must be a reconciliation that restores the former relations of the parties. Mere copulation without occupying the same habitation and dwelling there as husband and wife is by no means sufficient to sustain such a conclusion.'

"Another statement of the rule is found in 30 C. J., § 847, page 1066: 'Strictly speaking, a contract of separation is annulled and avoided, not solely, or necessarily as a matter of law, by a subsequent reconciliation, cohabitation, or resumption of the marital relation, but rather by the intentional renunciation of the agreement which the reconciliation and resumption of the marital relation sometimes evidences. Subsequent cohabitation has the effect of avoiding the contract so far, and only so far, as it establishes an intention to renounce the agreement.' "

In the case of *Bengochea* v. *Bengochea*, 94 Cal. App. 647, 271 Pac. 760, it was argued, as here, that a property settlement was abrogated by the fact of the spouses resuming marital relations. After pointing out that the wife had received the agreed share of property and had

not sought to rescind the agreement after the reconciliation, the court held that the cohabitation of the parties did not of itself abrogate the settlement.

Appellee cites several cases from California where separation agreements were held to have been cancelled by resumption of marital relations by the husband and wife. In all of these cases, however, the courts found that there was a definite oral agreement to cancel the previous written agreement; or that the acts of the parties showed an intent to abrogate the executory features of the contracts, such as an agreement to live apart and to pay sums monthly for maintenance. The California authorities are discussed in the light of this distinction in *Mundt* v. *Conn. General Life Ins. Co.*, 35 Cal. App. 2d 416, 95 Pac. 2d 966.

The agreement in the case at bar contained no provision whatever that the parties were to live apart or that the settlement was made in contemplation of that. It simply recited that because of "unhappy differences" they desired to make a full and final settlement of their property rights. When the transfer of the agreed property was mutually effected, the contract was completely executed. There remained no executory features to be abrogated. We do not think the evidence establishes any intent by the parties to abrogate the settlement agreement which contained the paragraph above quoted specifically providing that future cohabitation would not have that effect. It follows that the widow is not entitled to dower if the California contract is enforceable here.

The leading case in Arkansas on separation agreements is *Carter* v. *Younger*, 112 Ark. 483, 166 S. W. 547. There we said at page 489:

"Where the parties to a valid separation agreement afterward come together, and live together as husband and wife, where their conduct toward each other is such that no other reasonable conclusion can be indulged than that they had set aside or abrogated their agreement of separation, then such agreement should be held as annulled by the parties to it, and their marital rights deter-

mined accordingly.'' The rule that whether a reconciliation operates to annul the provisions of a separation agreement depends upon the intent of the parties as shown by their acts was reaffirmed in *Sherman* v. *Sherman,* 159 Ark. 364, 252 S. W. 27.

Enforcement of the California contract in this case would not be at variance with the announced rules of law in this state. We therefore hold that appellee has no rights in the estate of the deceased except under the will. The judgment is accordingly reversed and the cause dismissed.