ROBINSON *v.* SHIVLEY, ADMR.

5-2527                                           351 S. W. 2d 449

Opinion delivered November 27, 1961.

*Bon McCourtney & Associates,* by *Claude B. Brinton,* for appellant.

*Harry L. Ponder, Patrick O. Freeman, Jr.,* Thayer, Mo., for appellee.

GEORGE ROSE SMITH, J.   This is an application by the appellant, as the widow of Thomas J. Robinson, for an award of statutory allowances from her husband's estate. Ark. Stats. 1947, § 62-2501. The administrator contested the petition on the ground that Mrs. Robinson had joined with her prospective husband in an antenuptial contract by which she relinquished all claims to ''dower, homestead, widow's award, or other right'' in her husband's estate. The probate judge held the contract to be valid and accordingly denied the widow's application for statutory allowances.

The controlling question is whether the antenuptial contract was valid under the law of Missouri, where Robinson was living before the marriage and where the contract was executed in 1957. The agreement recites that it is to be governed by Missouri law, and in any event that law would be controlling, since the contract was signed in that state. *Simpson* v. *Weatherman,* 216 Ark. 684, 227 S. W. 2d 148, 18 A. L. R. 2d 755.

The parties were in their late fifties when they were married in August of 1957. On the morning of their wedding day they executed the antenuptial agreement, in the office of Robinson's Missouri attorney. In substance the agreement provided (a) that Robinson would provide reasonable support for his wife while the two were living together as husband and wife, and (b) that each spouse relinquished any claim whatever to an interest in the other's estate. The appellant received no transfer of any property under the contract.

It cannot be doubted that the appellant's attempt to release her rights as Robinson's widow would have been void under the law of Missouri as it existed before the enactment of a new probate code in 1955. From 1825 until 1955 Missouri had a statute that read in part as follows: "If any woman prior to and in contemplation of marriage shall, in agreement or marriage contract with her intended husband, or other person, receive any estate, either real or personal, to take effect after the death of her husband, by way of jointure, as a provision for her support during life, and expressed to be in full discharge of all her claim of dower, such estate shall be valid, and a bar to dower in the estate of her husband." Mo. Rev. Stats. Anno. (1939), § 334.

This statute was construed by the Missouri courts to mean that a woman's antenuptial release of dower in her prospective husband's estate was valid only if she received under the agreement a conveyance of property as a provision for her support during life. As the court said in the leading case of *Mowser* v. *Mowser*, 87 Mo. 437: "Even if a parol agreement can be allowed to defeat dower, the widow must receive under it, real or personal property as a provision for her support during life; it is against public policy to allow a man, by an agreement before marriage, which does not secure to the wife a provision for her support during life after his death, to bar her right to dower. The statutes sanction no such agreement." Later cases include *King* v. *King*,

184 Mo. 99, 82 S. W. 101, and *Reger* v. *Reger,* 316 Mo. 1310, 293 S. W. 414.

Despite these cases the appellee insists that the ancient Missouri rule was abrogated by the 1955 probate code, which revised the former statute to read as follows: "If any person prior to and in contemplation of marriage in agreement or marriage contract with his intended spouse, or other person, receives any estate either real or personal to take effect after the death of his spouse, or any other time, as a provision for his support during life, and expressed to be in full discharge of all his rights of inheritance or any other statutory rights in the estate of his spouse, such estate shall be valid, and a bar to his rights of inheritance and other statutory rights in the estate of his spouse." Mo. Rev. Stats. (1959), § 474.120.

We are not convinced that the legislature intended the suggested change in the law. The appellee relies largely upon a treatise by Almon H. Maus on Missouri Probate Law and Practice, published in 1960. In § 1241 of that work the author discusses the possibility that the settled Missouri rule *may* have been changed by the probate code. To support this view it is pointed out that the Missouri statute now applies to both spouses instead of to the woman alone. It is also pointed out that under the probate code a woman may, before or after marriage, waive her right to take against her husband's will if she receives for the waiver "a fair consideration under all the circumstances." Mo. Rev. Stats. (1959), § 474.220.

Neither of the two provisions mentioned lends persuasive support to the appellee's argument. The probate code abolished dower and curtesy, § 474.110, and provided instead that a surviving husband or wife should have identical statutory interests in the other's estate. § 474.010. The law governing antenuptial contracts was apparently amended to conform to this policy of treating the two spouses exactly alike. And, in permitting a woman to waive her right to take against her husband's will, the legislature was careful to insert a requirement

that she receive a fair consideration for the waiver. This is essentially similar to the protection long afforded her by the antenuptial contract statute.

The Missouri probate code of 1955 was a comprehensive statute that necessarily required careful draftsmanship. It must be assumed, and really cannot be doubted, that the framers of the code were familiar with the settled judicial construction of the statute controlling antenuptial agreements. That law was rewritten to make it harmonize with other provisions in the code, but there is no sound basis for saying that the legislature meant to change what had been the state's declared policy for a hundred and thirty years. The vital clause in the older law was that the woman receive ''a provision for her support during life.'' This clause was carried forward almost verbatim in the section as rewritten in 1955. When we consider how simple it would have been for the lawmakers to have expressly made a change in the law if that had been their desire we are not convinced that they intended to achieve the same result by indirection.

Reversed.