ANDERSON J. WARD *v.* CORA H. WARD

5-5440                                    463 S. W. 2d 90

Opinion delivered February 8, 1971

*Russell & Hurley,* for appellant.

*Jack L. Lessenberry,* for appellee.

CONLEY BYRD, Justice. The issue of adultery in this divorce case between appellant Anderson J. Ward and appellee Cora H. Ward resolves itself into a swearing match between Cora and her alleged paramour on one side and Anderson and his alleged detective Tom Burke on the other side.

The proof in the record is rather cogent to show that Anderson was either having an affair with a teenage blonde or at least an infatuation. One witness described a scene in which the girl was seen sitting on his lap and kissing him. Several witnesses testified that Anderson and the blonde usually arrived together at the club where he played in a band three nights a week. They were also described as leaving together. One witness said that Anderson indicated that he was in love with the blonde and was anticipating marrying her. Anderson himself became aware of his wife's objection to the girl friend as early as July of 1969. Notwithstanding his wife's pleas he continued to play in the band and to keep late hours—up to 4:00 A.M.

After Cora had filed suit for divorce, Anderson employed Tom Burke to spy on his wife's activities. Burke testified to two alleged adulterous incidents. The first occurred on December 30, 1969, in the home of the alleged paramour. The next incident, in Cora's home on January 21, 1970, was allegedly heard over a radio transmitter secreted in Cora's bedroom. Both Burke and Anderson testified to hearing intimate conversations over the radio and claimed to have a tape recording. However, the tape recording was inaudible when played for the court. On cross-examination Burke's credibility was seriously impaired by his admission that he was a full time employee of one of appellant's counsel, that he had been fined on some "hot check" and false pretense charges, but that he could not remember whether he had been so charged or convicted in the years of 1968 and 1969.

The personal indignities on the part of appellant prior to the filing of the charge of adultery are readily apparent and unless appellant has proved his charge of

adultery, appellee was certainly entitled to a divorce. Appellant argues that the chancellor concluded that adultery was not in issue because not shown to have been committed before the filing of the divorce suit. If the trial court so ruled, it was in error because the adultery, if proved, would be a defense if it occurred before the filing of the counterclaim. See *Northcutt* v. *Northcutt*. 249 Ark. 228, 458 S. W. 2d 746. However, we hold that the alleged error if made is harmless for two reasons.

(1) The appellee here received no greater property rights than she would have been entitled to receive had the divorce been granted to appellant. In making this statement, we realize she was given the household furniture, but under the circumstances it makes no practical difference because if she had not been given the household furniture, the child support payments would have had to be increased to pay for other furniture.

(2) The burden of proof on the adultery issue was upon appellant. In view of the questionable credibility of appellant and his alleged detective, the evidence does not preponderate in his favor on that issue.

Appellant complains that the trial court erred in refusing to admit his tape recording of the alleged January 21st incident into evidence. Admittedly the court found the recording to be inaudible. Under such circumstances, we are at a loss to understand its relevancy and hold that the trial court was correct.

The trial court awarded the custody of the children to appellee purely upon the theory that such award was for the best welfare of the children. We find nothing in the record to reverse this award.

The last issue on which appellant complains is that the trial court declared appellee to be the fee owner of an undivided one half interest in the home. In this connection the record shows that the home was originally acquired in both names, with the down payment money coming from a loan acquired by appellee

from a credit union where she then worked. When the parties were first divorced in 1965, a property settlement was entered into whereby appellee quitclaimed the property to appellant. That decree was set aside by the parties and their marital relations were resumed as before. Appellant did not in fact record his quitclaim deed until August of 1969, after his wife learned of the teenage girl friend. The only inference from the parties' conduct is that they intended to abrogate the property settlement at the time they caused the divorce decree to be set aside. The trial court's holding is supported by the authorities. See *Sherman v. Sherman*, 159 Ark. 364, 252 S. W. 27 (1923).

On cross appeal appellee contends that she should have been awarded additional child support and a greater attorney's fee. The record here does not show that the trial court abused its discretion on either issue. However, we are allowing appellee an additional attorney's fee of $750 for his services on this appeal together with all costs.

Affirmed.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result, not because I agree that appellant failed to meet his burden of proof, but because this marriage could never be salvaged by reconciliation, and it seems to me that the majority has properly inferred that the primary responsibility for its wrecking lies with appellant. No useful purpose would be served in further public exposure of the testimony, so I forego any discussion of the evidence pertaining to the charges against appellee. It is significant, however, that the chancellor stated that there was direct testimony as to adulterous actions after the separation and filing of the suit, but that the testimony was not sufficient to prove adultery before the separation and before the filing of the suit.

This is not a case calling for the application of the doctrine of recrimination if the parties may not be said

to be equally at fault. It seems to me that we cannot say that the decree granting a divorce to appellee upon the grounds of indignities is against the preponderance of the evidence. Were it not for appellant's conduct, it is plausible to say that there would have been no loss of love for him by appellee, no separation and no occasion for any suspicion of misconduct on her part. Thus it seems to me that this is a case for the application of the doctrine of comparative rectitude (perhaps the doctrine should be labeled comparative iniquity) against the first offender. This would affirm the decree. See *Longinotti* v. *Longinotti,* 169 Ark. 1001, 277 S. W. 41; *Ayers* v. *Ayers,* 226 Ark. 394, 290 S. W. 2d 24. I agree with the majority opinion in other particulars.